UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| DANNY N. BRITTINGHAM, | § | |
| | § | |
| *Plaintiff,* | § | CASE NO. 1:21-cv-00096-MU |
| | § | |
| v. | § | **Defendant's Motion for Summary** |
| | § | **Judgment and Brief in Support** |
| CONSUMER ADJUSTMENT COMPANY, | § | |
| INC., | § | |
| | § | |
| *Defendant.* | | |

---

**DEFENDANT CONSUMER ADJUSTMENT COMPANY, INC.'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

COMES NOW Defendant/Movant, Consumer Adjustment Company, Inc. ("CACi" or "Defendant"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, moves this Court grant summary judgment in favor of the Defendant.  In support, Defendant states as follows:

## TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................................2

INTRODUCTION ...............................................................................................................3

SUMMARY JUDGMENT STANDARD OF REVIEW ................................................6

STATEMENT OF MATERIAL FACTS ........................................................................7

    a.   The Asset Acquisition...........................................................................................7

    b.   The Debt Buyer ....................................................................................................8

    c.   CACi's Dispute Procedure...................................................................................9

    d.   The Account ........................................................................................................10

    e.   Dispute and Response ........................................................................................11

ARGUMENT .....................................................................................................................14

    I.    CACi Adequately Investigated the Dispute and Deleted Its Reporting............................14

    II.   Plaintiff's Negligence Claim is Preempted By the FCRA...........................17

    III.  CACi Did Not Otherwise Violate the Law In Its Initial Reporting ...............................19

    IV.  Plaintiff's Remaining Allegations Are Unsupported by the Facts and Law....................22

CONCLUSION...................................................................................................................25

## INTRODUCTION

Plaintiff Danny Brittingham ("Plaintiff" or "Brittingham") brought this action under the Fair Credit Reporting Act, 15 U.S.C. § 1682 *et seq*. ("the FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("the FDCPA"), and common law negligence.  The allegations involve a debt account serviced by Defendant Consumer Adjustment Company, Inc. ("CACi"), doing business under the name "Midwest Recovery Systems, LLC," for original creditor National Payday Loans ("the Account").

Prior to the events alleged in the Complaint, CACi, a debt collector, by and through an asset purchase agreement dated September 1, 2019,  had acquired the assets of another collector, Midwest Recovery Systems, LLC ("Midwest").  Under the asset purchase agreement, CACi acquired the assets of Midwest, including the right to do business under Midwest's name, as well as Midwest's contractual relationship with various creditors and debt buyers.  CACi also acquired the data held by Midwest regarding the debtors whose accounts it had previously serviced.

Through one of those contractual relationships, CACi was assigned the Account by debt buyer O'Brien Wexler & Associates in April of 2020.  At the time of assignment, the information in Midwest's systems indicated Plaintiff Danny Brittingham had had two previous accounts serviced by Midwest.   Midwest's information about those accounts contained substantial difference from the information CACi had received about the Account – they variously listed different account numbers, amounts, clients, and incurred dates.  As a result, the Account appeared to CACi to involve a different debt than any of the accounts Midwest had serviced prior to the Asset Purchase Agreement.  CACi proceeded, then, to report about the Account to the Credit Reporting Agencies ("CRAs").

In June of 2020, after Plaintiff received notice of that reporting from Credit Karma (a service allowing consumers to access information about their credit), he sent disputes to the CRAs. Those disputes were transmitted to CACi, and CACi attempted to validate the Account by asking the current creditor to provide supporting account documentation and statements.  This effort was unsuccessful, in that the debt buyer who had assigned the debt to CACi did not provide documentation about the debt within the specified thirty-day time period.  As a result, in line with its policies and procedures, 27 days after receiving the request for validation, CACi requested the CRAs delete their reporting of the Account.

Upon this background, Plaintiff alleges CACi's conduct violated the FCRA and the FDCPA, and that CACi is liable in common law negligence.  Plaintiff's causes of action involve a number of theories that are supported by neither the facts nor the law.  The majority of Plaintiff's FCRA theories allege CACi did not adequately respond to Plaintiff's dispute to the CRAs in 2020. This allegation is demonstrably false, in that, pursuant to its policies and the requirements of the FCRA, CACi investigated the dispute and sent requests to the CRAs for deletion of its credit reporting of the Account within less than one month of the dispute.

Plaintiff next attempts to allege CACi violated the law and was negligent in its *initial* reporting of the debt, in that CACi knew or should have known the debt was invalid *before* it reported the debt.  This state common-law claim is preempted by the FCRA and is thus not cognizable.  Plaintiff's allegation is further unsupported by the law, in that neither the FCRA nor the FDCPA require debt collectors to engage in the type of pre-investigation procedure invoked by Plaintiff, here.  And the undisputed facts still demonstrate CACi acted reasonably in that it had no reason to believe the debt had ever been disputed or deleted, and thus was not negligent.

Plaintiff's additional theories of liability are similarly unsupported by the facts and the law. Plaintiff first claims, without any factual support, that CACi attempted to collect unauthorized "late fees," an allegation Plaintiff has admitted he has no factual basis to make. Finally, Plaintiff claims CACi violated the FDCPA by furnishing information to the CRAs without first communicating with him about the debt. This allegation does not state a claim under the FDCPA, in that the statute does not require pre-communication before a debt collector reports an account to the CRAs.

The material facts of this case, then, are not in dispute. CACi is entitled to judgment as a matter of law as to each and every of Plaintiff's causes of action. The Court should grant summary judgment in CACi's favor.

## SUMMARY JUDGMENT STANDARD OF REVIEW

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  "If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence."  *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

"The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment."  *Price v. Dunn*, 385 F. Supp. 3d 1215, 1225 (S.D. Ala. 2019).  "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration."  *Id*.

## STATEMENT OF MATERIAL FACTS

CACi states there is no genuine dispute as to the following facts:

### a.  *The Asset Acquisition*

1.      CACi is a Missouri corporation that is in the business of collecting debts.  Exhibit 1 at ¶ 4.

2.      At any given time, CACi services approximately 300,000 debt accounts.  Exhibit 1 at ¶ 6.

3.      In September of 2019, CACi bought the assets of Midwest Recovery Systems, LLC ("Midwest").  Exhibit 2 at 14:4-6; Exhibit 1 at ¶ 7.

4.      CACi's purchase of Midwest's assets was an asset purchase, not a stock purchase.  Exhibit 2 at 14:7-9.

5.      In that September 2019 asset purchase, CACi acquired Midwest's physical lists, their client relationships, the service agreements with those clients, and their bank account.  Exhibit 2 at 14:10-14.

6.      In the asset purchase, CACi also acquired the right to do business under the name "Midwest Recovery Systems."  Exhibit 2 at 65:5-8.

7.      According to their asset purchase agreement, CACi specifically did not assume any liabilities of Midwest or its shareholders, directors, officers, affiliates, creditors, parent or subsidiary companies.  Exhibit 1 at ¶ 8.

8.      In the asset purchase agreement, Midwest, as the seller, covenanted that there were no actions, suits, proceedings, or investigations pending against Midwest by any federal, state, municipal, or other governmental body.  Exhibit 1 at ¶ 9.

9.      In the asset purchase agreement, Midwest, the seller, also covenanted that it had

complied with and was operating its business in compliance with all laws, regulations, and orders applicable to its business.  Exhibit 1 at ¶ 10.

10.     At the time of the asset purchase agreement, CACi was unaware of any allegations against Midwest involving so-called "debt parking."  Exhibit 2 at 16:20-17:6.

11.     At the time of the asset purchase agreement, Midwest represented to CACi that the pending FTC investigation concerned allegations that Midwest had not been properly following up on disputes from consumers.  Exhibit 2 at 17:1-6.

12.     CACi learned that Midwest had been accused of "debt parking" at the time of the FTC entered its Stipulated Order in Case No. 4:20-cv-01674, on or about December 23, 2020. Exhibit 2 at 17:13-21.

13.     CACi maintains no ongoing relationship with Midwest.  Exhibit 2 at 26:2-4.

14.     When CACi obtained Midwest's assets, CACi spent some time using the computer system and data provided by Midwest to service accounts originating from Midwest and/or Midwest's clients.  Exhibit 2 at 37:14-38:2.

**b.     *The Debt Buyer***

15.     As a result of the Midwest asset acquisition, in or about September of 2019, CACi acquired a contractual relationship with O'Brien Wexler & Associates ("OBW").  Exhibit 2 at 65:1-4.

16.     OBW is a debt buyer.  Exhibit 2 at 31:6-7.

17.     OBW is no longer a client of CACi.  Exhibit 2 at 31:8-9; Exhibit 1 at ¶ 20.

18.     CACi eventually terminated its relationship with OBW because of OBW's frequent failure to provide validation of disputed debts.  Exhibit 2 at 31:10-13.

19.     CACi stopped accepting new business from OBW in or about October of 2020.

Exhibit 2 at 32:12-18.

20.     CACi terminated its relationship with OBW, and canceled all open accounts originating from OBW, in or about December of 2020 or January of 2021.  Exhibit 2 at 32:12-18.

21.     CACi had a contractual agreement with OBW that obligated OBW to provide accurate data with its account assignments.  Exhibit 2 at 56:6-10, 66:22-67:19; Exhibit 1 at ¶ 21.

22.     CACi did not have reason to believe OBW's debts were actually invalid, but terminated the relationship because CACi did not *receive* validation information from OBW. Exhibit 2 at 32:23-33:2.

        **c.      CACi's Dispute Procedure**

23.     When CACi receives a dispute from a consumer or from the CRAs, its employees must follow a standard procedure.  Exhibit 4.

24.     Disputes are received from CRAs through a system known as "e-OSCAR."  Exhibit 1 at ¶ 11.

25.     When a dispute is received, either through e-OSCAR or from a consumer, the CACi employee handling the dispute will mark the account as "disputed" in CACi's system.  Exhibit 4; Exhibit 1 at ¶ 12.

26.     The employee then requests validation documentation from the client.  Exhibit 4; Exhibit 1 at ¶ 13.

27.     CACI also engages in "verification" at the time of the dispute, which is a different process than "validation."  Exhibit 2 at 31:20-32:6; Exhibit 1 at ¶ 14.

28.     "Verification" of an account involves making sure the information in CACi's system matches the information provided by the consumer or the CRAs.  Exhibit 2 at 31:20-32:6; Exhibit 1 at ¶ 15.

29.     "Validation," on the other hand, involves requesting supporting documentation from the client to ensure the debt is actually legitimate.  Exhibit 2 at 31:20-32:6; Exhibit 1 at ¶ 16.

30.     In other words, "verification" ensures the information concerns the correct person, while "validation" ensures the components of the debt are accurate.  Exhibit 2 at 31:20-32:6; Exhibit 1 at ¶ 17.

31.     Under its policies and procedures, when CACi does not receive validation information from the client within thirty days of the dispute, CACi requests the CRAs delete their information on the disputed account.  Exhibit 4; Exhibit 1 at ¶ 18.

    *d.     The Account*

32.     On April 18, 2020, CACi was assigned a debt account with account number 12234558, matched to the name of debtor Danny Brittingham ("the Account").  Exhibit 5; Exhibit 1 at ¶ 19.

33.     The Account originated from OBW.  Exhibit 5; Exhibit 2 at 31:2-7; Exhibit 1 at ¶ 20.

34.     At the time it received the Account, CACi's information showed two other accounts under Danny Brittingham's name which had previously been serviced by Midwest.  Exhibit 2 at 41:16-42:8; Exhibit 5; Exhibit 1 at ¶ 24.

35.     The three accounts listed under Brittingham's name, including the Account, were associated with different account numbers.  Exhibit 2 at 41:16-42:8; Exhibit 5; Exhibit 1 at ¶ 25.

36.     The Account listed a different Original Balance than one of the previous accounts under Brittingham's name.  Exhibit 5; Exhibit 1 at ¶ 25.

37.     All three separate accounts listed under Brittingham's name were associated with different dates incurred.  Exhibit 5; Exhibit 1 at ¶ 25.

38.     One of the previous accounts indicated it had originated from a different client than the Account.  Exhibit 5; Exhibit 1 at ¶ 25.

39.     Due to the different account numbers, amounts, dates incurred, and clients, the three accounts listed under Brittingham's name appeared to CACi to represent three different debt accounts.  Exhibit 2 at 42:12-16; Exhibit 1 at ¶ 25.

40.     The data regarding the Account was provided by the debt buyer OBW.  Exhibit 5; Exhibit 1 at ¶ 20.

41.     The data regarding the other two accounts under Plaintiff's name originated with Midwest, and was not affirmatively entered into the system by CACi.  Exhibit 5; Exhibit 1 at ¶ 24.

42.     As a result of the facts listed in DSMF 34 - 41,[1] CACi had no reason to believe the Account had previously been serviced by Midwest or by any other debt collector.  Exhibit 2 at 42:12-16; Exhibit 1 at ¶ 26.

43.     After being assigned the Account by OBW on April 18, 2020, CACi began reporting on the account to credit reporting agencies ("CRAs") on April 20, 2020.  Exhibit 6; Exhibit 2 at 66:7-15; Exhibit 1 at ¶ 27.

44.     Before it began reporting on the account to CRAs, CACi had no reason to suspect the Account was not valid.  Exhibit 2 at 56:6-10.

### e.     *Dispute and Response*

45.     On June 26, 2020, CACi received a dispute originating from Plaintiff on the Account through e-OSCAR.  Exhibit 7; Exhibit 8; Exhibit 1 at ¶ 28.

46.     Plaintiff recalls sending a dispute to TransUnion and Equifax in June of 2020.

---

[1] This Brief will refer to paragraphs in Defendant's Statement of Material Facts as follows: "DSMF ___ (paragraph number)."

Exhibit 3 at 25:24-26:4.

47.   CACi followed its policies and procedures with regard to the disputes received on the Account.  Exhibit 1 at ¶ 29.

48.   CACi first engaged in verification, and found the information in its system accurately matched the information provided through the e-OSCAR system.  Exhibit 1 at ¶ 15.

49.   Upon receiving the dispute, CACi also requested validation documentation from its client, OBW.  Exhibit 1 at ¶ 30.

50.   CACi did not receive validation documentation of the Account from the client, OBW, within the 30-day time period.  Exhibit 2 at 33:3-7.

51.   Per its policies and procedures, when OBW failed to provide validation documentation, CACi requested the CRAs delete their information on the Account on July 23, 2020.  Exhibit 6; Exhibit 2 at 66:7-21; Exhibit 1 at ¶ 32.

52.   During 2020, Plaintiff habitually checked his credit through Credit Karma approximately once per week.  Exhibit 3 at 17:17-20.

53.   Plaintiff has confirmed that he noticed the Account was removed from his credit reporting some time after his June 2020 disputes.  Exhibit 3 at 26:15-22.

54.   The last time Plaintiff recalls seeing the Account reported on his credit report was sometime between June and September of 2020.  Exhibit 3 at 17:5-11; 32:15-23.

55.   Plaintiff admits he has no reason to believe CACi did not investigate his dispute from June of 2020.  Exhibit 3 at 33:10-34:12.

56.   Plaintiff admits he has no reason to believe CACi did not review all the relevant information regarding his June 2020 dispute.  Exhibit 3 at 34:21-35:12.

57.   Plaintiff admits he has no reason to believe CACi continued to submit false

information to CRAs after receiving notice of Plaintiff's June 2020 dispute.  Exhibit 3 at 35:13-22.

58.     Plaintiff admits he has no reason to believe CACi knew the information about his Account was inaccurate, incomplete, or not verifiable after receiving his June 2020 dispute. Exhibit 3 at 36:23-37:13.

59.     Plaintiff admits he has no reason, other than conjecture, to believe CACi collected or attempted to collect late fees that it was not entitled to collect.  Exhibit 3 at 41:15-42:15.

60.     Plaintiff's belief that CACi was negligent is based only on his opinion that CACi should have "done some due diligence on those loans before" CACi allegedly bought them. Exhibit 3 at 43:7-22.

61.     CACi did not, in fact, ever purchase the Account, but was assigned to service it as a debt collector.  Exhibit 1 at ¶ 22.

## ARGUMENT

### I.   CACI ADEQUATELY INVESTIGATED THE DISPUTE AND DELETED ITS REPORTING

The majority of Plaintiff's causes of action center around alleged inadequacies in CACi's investigation and response to his dispute.  The undisputed facts of this case demonstrate any such inadequacies are a fiction.  In fact, CACi immediately investigated the dispute, verified the account information, then immediately requested deletion of the tradeline when it was unable to validate it within the allotted thirty-day time period.  Under the undisputed facts of this case, CACi reasonably did everything required by the law in response to Plaintiff's dispute.

The FCRA lays out a specific set of actions that must be taken by furnishers of consumer information[2] upon notice of a dispute.  "After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-- (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; [and] (C) report the results of the investigation to the consumer reporting agency[.]" 15 U.S.C.A. § 1681s-2 (b)(1).  CACi executed each of these obligations in this case.

Courts in the Eleventh Circuit use a "reasonableness" standard to evaluate whether a furnisher of credit information has met its dispute investigation requirements.  *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).  "[W]hat constitutes a 'reasonable investigation' will vary depending on the circumstances of the case and whether the investigation is being conducted by a CRA under § 1681i(a), or a furnisher of information under § 1681s–2(b)."

---

[2] Plaintiff alleges CACi is a "furnisher of information" under the FCRA.  Doc. 26 at ¶ 16.  Without conceding the  legal definition of that term is met, CACi proceeds in this motion under the assumption that the Court will decide the issues presented based on regulations appliable to "furnishers" under the FCRA.

*Id*.  "Whether a furnisher's investigation is reasonable will depend in part on the status of the furnisher . . . and on the quality of documentation available to the furnisher."  *Id*.  "What steps are reasonable in any given case is a generally a fact-intensive question, but the analysis considers the furnisher's knowledge of the facts and access to the relevant information."  *Gibbs v. Equifax Info. Servs., LLC*, No. 1:19-CV-3330-MHC-JSA, 2020 WL 8225354, at *7 (N.D. Ga. Mar. 3, 2020).

The FCRA finally imposes additional steps once a furnisher conducts an investigation. Where the furnisher either finds inaccuracies or determines disputed information cannot be verified, the furnisher must either "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."  15 U.S.C. § 1681s-2(b)(1)(E).  The investigation must be completed within thirty days.  *See* 15 U.S.C. § 1681s-2(b)(2) *and* 15 U.S.C. § 1691i(a)(1)(A).  The undisputed facts below demonstrate, again, that CACi executed these obligations.

The undisputed facts of this case show CACi conducted a reasonable investigation upon notice of Plaintiff's dispute and then deleted the reporting in a timely fashion.  In responding to disputes, CACi first marks the account as "disputed" in its system.  DSMF 25.  CACi then engages in two parallel investigation processes: "verification" and "validation."  DSMF 27-29.  To "verify" an account, CACi checks the information provided by the CRAs and the dispute information against its own system to determine if the information in its system matches the information provided by the debtor or the CRA.  DSMF 28, 30.  CACi also "validates" the disputed account by requesting appropriate documentation from its client (the original creditor or debt buyer that owns the subject debt).  DSMF 26.  The purpose of "validation" of a disputed account is to ensure the components of the debt are actually accurate.  DSMF 30.  When CACi does not receive the requested validation documentation from the client within thirty days, it is CACi's policy to

request the CRAs delete the disputed information.  DSMF 31.

CACi followed its procedures to the letter with regard to Plaintiff's dispute.  DSMF 47.  On June 26, 2020, CACi received the dispute through the e-OSCAR system.  DSMF 45.  CACi first engaged in verification, and found the information in its system matched the information provided in the dispute.  DSMF 48.  CACi also requested validation documentation from its client, debt-buyer OBW.  DSMF 49.  This request received no response, and CACi did not receive validation documentation from OBW within the 30-day window.  DSMF 50.  Per its policies and procedures, then, CACi requested deletion of the reporting on the Account on July 23, 2020 (less than 30 days after receiving the dispute on June 26).  DSMF 51.

Plaintiff's testimony confirms this timeline.  Plaintiff confirms he noticed the reporting was removed from his credit report after his dispute.  DSMF 53.  He recalls the removal occurred sometime between June and September of 2020 (which is consistent with CACi's records indicating deletion on July 23, 2020).  DSMF 54.  And Plaintiff admits he has no reason to believe CACi did not investigate his dispute, that CACi did not review all the relevant information regarding the dispute, or that CACi continued to submit false information after receiving notice of the dispute.  DSMF 55-58.  Indeed, Plaintiff admits he has no reason to believe CACi knew any information about his Account was inaccurate.  DSMF 58.

CACi clearly met all its legal obligations in its reporting, investigation, and deletion of Plaintiff's Account upon notice of the dispute.  First, CACi's investigation was reasonable.  The reasonableness of CACi's investigation must be evaluated based upon quality of documentation available to it at the time of the dispute.  *See Hinkle*, 827 F.3d at 1302.  As a debt collector, rather than an original creditor, CACi's procedure involved an attempt to *obtain* such documentation from its client in the course of its investigation.  DSMF 26, 49.  And when that attempt failed (due

to the client's lack of response to CACi's request for documentation), CACi took the precise next step required – it requested deletion of the Account.  DSMF 51.  Indeed, CACi requested deletion of the Account from Plaintiff's credit reporting just 27 days after receiving notice of the dispute. DSMF 45, 51.

As a matter of law, based on the undisputed facts of the case, Plaintiff cannot show CACi violated the FCRA by failing to conduct a reasonable investigation, failing to review all relevant information regarding Plaintiff's dispute, and/or failing to modify, delete, or permanently block the reporting of Plaintiff's credit information.  And Plaintiff similarly cannot show CACi violated the FDCPA by providing false information regarding the status of the debt.[3]  Indeed, the undisputed facts show exactly the opposite.  Upon receipt of the dispute, CACi conducted a reasonable investigation – which involved reviewing all relevant information it had and requesting additional documentation from its client – and, when it was unable to validate the Account, CACi requested deletion of the Account's reporting in a timely manner.  CACi is thus entitled to summary judgment as a matter of law as to Count I and those portions of Count II alleged in ¶ 33(c).  Doc. 26 at ¶ 33(c).

## II.    PLAINTIFF'S NEGLIGENCE CLAIM IS PREEMPTED BY THE FCRA

In Count III, Plaintiff alleges CACi was negligent for failing to "exercise reasonable care to verify that the debts it was collecting or attempting to collect from Plaintiff and class members were legitimate."  Doc. 26 at ¶ 42.  While somewhat ambiguously-pleaded, this Count appears to

---

[3] It should be noted that Plaintiff has provided no evidence that the information concerning the debt was actually invalid, or that it was actually the same debt he allegedly disputed previously. The evidence merely shows, instead, that CACi was unable to obtain verification documents due to the non-response of OBW.

allege common-law negligence in the *initial* reporting of the debt – i.e. that CACi breached its ostensible duty to verify the validity of the debt prior to reporting it to the CRAs.  This claim is factually and legally inaccurate, as argued more extensively in the next Argument section below.  But the Court need not reach the merits of the claim, as it is clearly preempted by the FCRA.

Section 1681t of the FCRA prohibits any requirement or prohibition from being imposed under the laws of any state "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"[4]  15 U.S.C. § 1681t(b)(1)(F).  Section 1681s-2, in turn, imposes a number of duties upon furnishers of information, including duties to provide accurate information in their reporting to CRAs, correct and update that information as needed, and (as laid out in detail in this Brief's Argument Section I, above), respond to disputes with reasonable investigations and requests for changes or deletions where necessary.  15 U.S.C. § 1681s-2.  As a result, state law tort claims (including negligence) brought against furnishers for "fail[ing] a duty to accurately report . . . account information . . . are preempted."  *Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1260 (M.D. Ala. 2007).

While the Eleventh Circuit has not addressed preemption under section 1681t directly, a strikingly similar case in the Northern District of Alabama found a state law claim preempted where that claim alleged a furnisher was negligent for failing "to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy."  *Gregory v. Select Portfolio Servicing, Inc.*, No. 2:15-CV-00781-JHE, 2016 WL 4540891, at *10 (N.D. Ala. Aug. 31, 2016).  The court found the plaintiff's

---

[4] The statute contains two specific state-law carve-outs which do not apply here.

18

state law tort claims preempted "to the extent it is based on allegations involving information furnished to the credit reporting agencies[.]"  *Id*; *see also Scott v. First S. Nat'l Bank*, 936 F.3d 509, 521 (6th Cir. 2019) (state common law claims are preempted by the FCRA); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011) (same).

Plaintiff's negligence claim presumably invokes the common law of the State of Alabama, which, like the negligence claim in *Gregory*, is a "requirement or prohibition . . . imposed under the laws of [a] State."  *See* Section 1681t(b).  And Plaintiff's underlying allegation – that CACi did not adequately verify a debt before proceeding to report it – is clearly and unambiguously a "subject matter regulated under section 1681s-2."  And, at its core, Plaintiff's negligence claim alleges CACi reported inaccurate information, which is regulated by section 1681s-2(a).  Under the plain language of the statute, the negligence claim is thus clearly preempted by the FCRA.

As a matter of law, Plaintiff's negligence claim is not cognizable, in that it is preempted by the FCRA's preemption provisions in section 1681t.  CACi is entitled to judgment on Count III as a matter of law.

## III.   CACI DID NOT OTHERWISE VIOLATE THE LAW IN ITS INITIAL REPORTING

Even if preemption does not apply to Count III, the law and the undisputed facts show CACi is entitled to judgment as a matter of law regarding Plaintiff's allegations that CACi should not have initially reported the debt.[5]  Plaintiff's allegations attempt to impose requirements and

---

[5] CACi anticipates Plaintiff will attempt to argue that the initial reporting of the debt also violated the FCRA, the FDCPA, or both, in addition to constituting common-law negligence.  This violation is not explicitly alleged in the Second Amended Complaint and, if made, should be disregarded.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (plaintiffs may not raise new claims at the summary judgment stage).  Nonetheless, CACi will address such an argument directly herein and in its Response brief.

regulations on furnishers of credit information that do not exist, and to impose liability in areas of regulation under which the FCRA specifically precludes private causes of action.  This Court should not permit Plaintiff to bootstrap its prohibited claims into a common law negligence theory of liability.

First, CACi simply had no obligation under the FCRA or any other law to engage in an investigation about the validity of the debt prior to reporting on it.  Section 1681s-2 of the FCRA imposes a number of specific obligations on furnishers of credit information.  The statute, though, *only* requires a furnisher to conduct any kind of investigation *after* it receives a dispute from a consumer.  *See* 15 U.S.C. § 1681s-2(a)(8)(B) (investigation required upon receipt of dispute directly from consumer); 1681s-2(b) (investigation required upon receipt of dispute from CRAs). The statute simply contains no requirement whatsoever for a furnisher to investigate the validity of a debt before commencing to report on that account to the CRAs.

Additionally, even if CACi could be liable if it "should have known" the Account referred to a previously-disputed debt, the facts of the case do not support the conclusion that CACi "should have known."  When CACi received the Account from its client, OBW, data it had acquired from Midwest showed two other accounts listed under Plaintiff's name.  DSMF 34.  Those accounts, though, contained various differences, including different account numbers, original balances, dates incurred, and as to one of the accounts, a different originating client.  DSMF 35-38.  As a result of those differences, CACi's system and employees would have reasonably assumed those accounts represented different debts.  DSMF 39.  It should be noted that the information on the current Account was provided by CACi's client, debt buyer OBW, and that the information regarding the other previous accounts originated with Midwest – neither were affirmatively entered into the system by CACi's personnel or software.  DSMF 40; 41.  Thus, though Plaintiff

20

may allege he previously disputed the debt that was the subject of this Account, such dispute occurred prior to CACi's assignment of the Account, and the information to which CACi had access did not put CACi on notice that the Account may be related to a previously-disputed debt. And CACi reasonably relied on the information provided by Midwest and OBW, because both entities had made covenants under their contracts with CACi that permitted CACi to rely upon the information they provided. *See* DSMF 9; 21.[6]

Finally, in addition to the preemption discussed above, Plaintiff's negligence claims are specifically prohibited by the plain language of the FCRA. The heart of Plaintiff's claim is that CACi reported inaccurate information when it initially began reporting on the Account. It is true that the FCRA prohibits furnishers of credit information from reporting inaccurate consumer information. *See* 15 U.S.C. § 1681s-2(a). But, under section 1681s-2(c) and (d), the FCRA specifically prohibits private causes of action for violations of subsection (a), limiting enforcement to the Federal Trade Commission and certain other federal and state administrative authorities. *See* 15 U.S.C. § 1681s-2(c), (d). Thus, though Plaintiff's attempt to circumvent this prohibition by bringing this cause of action under common law negligence and not specifically invoking the statute may be clever, this Court should not, nonetheless, permit him to ignore the law in this manner.

Under both the applicable law and the undisputed facts of this case, any claim by Plaintiff alleging CACi should not have reported the debt in the first place – including Plaintiff's negligence

---

[6] Though these issues may be better addressed in Defendant's Response brief (after Plaintiff has attempted to provide evidence of negligence), CACi also notes that Plaintiff has yet to produce any evidence whatsoever of the elements of negligence, and is unlikely to do so. For example, any "duty" CACi owed to Plaintiff arose out of contract, not out of a legal duty, and Plaintiff has produced no evidence that CACi's reporting was the proximate cause of any alleged damages.

claim in Count III – are entirely unsupported.  CACi is entitled to judgment as a matter of law as to Count III and any other claim Plaintiff attempts to attach to this theory of liability.

## IV.   PLAINTIFF'S REMAINING ALLEGATIONS ARE UNSUPPORTED BY THE FACTS AND LAW

The remaining allegations referenced in Plaintiff's causes of action[7] are unsupported by the law and the undisputed facts.  Specifically, Plaintiff claims (a) CACi furnished information about the debt before communicating with him about that debt, which he claims violated FDCPA section 1692f, and (b) attempted to collect "late fees" it was not entitled to collect, in violation of FDCPA section 1692f(1).  The first claim, if true, was not a violation of the FDCPA as a matter of law.  And the second is entirely unsupported by any facts or allegations whatsoever, in that Plaintiff does not even *allege*, much less can he meet his burden to *prove*, that any portion of the debt at issue here included any "late fees."

Plaintiff's claim that CACi failed to communicate with him prior to furnishing information about the Account to the CRAs fails to state a claim under the FDCPA.  Section 1692f prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  The statute goes on to list several acts that, without limiting the section's applicability, would constitute per se violations of the statute, including, for example, collecting amounts not expressly authorized, § 1692f(1), causing surreptitious charges to be made, such as through collect phone calls, § 1692f(5), and sending mail with conspicuous symbols or language on a debt collection envelope that would inform a third party that the letter is from a debt collector, § 1692f(8).  The conduct alleged here can be found nowhere in the plain language of the statute,

---

[7] *See* Doc. 26 at Count II, ¶ 39(a) and (b).

nor can Plaintiff point to any authority that would apply the statute to the circumstances here.  This Court should not extend section 1692f to cover conduct without any legal support or factual evidence supporting its unconscionability.

Indeed, while no court has apparently addressed Plaintiff's specific claim, here, it may be instructive to examine how courts have dealt with similar claims under other sections of the FDCPA.  Section 1692g, specifically, deals with "initial communications" with consumers, and requires specific notices to be sent within five days of such initial communications.  *See* 15 U.S.C. § 1692g.  Courts have found, though, that credit reporting, by itself, *does not trigger that notice requirement*.  *See*, *e.g.*, *Perry v. Trident Asset Mgmt., L.L.C.*, No. 4:14-CV-1004-SPM, 2015 WL 417588, at *4 (E.D. Mo. Feb. 2, 2015) (communication with credit reporting agency not an "initial communication" triggering section 1692g notice requirement); *Toth v. Cavalry Portfolio Servs., LLC*, No. 2:13-CV-01397, 2013 WL 5658168, at *2 (D. Nev. Oct. 16, 2013)  (plain language of section 1692g does not require communication of rights to consumer within five days of credit reporting); *Robinson v. TSYS Total Debt Mgmt., Inc.*, 447 F. Supp. 2d 502, 509 (D. Md. 2006) (report to CRAs does not trigger notice requirements under FDCPA).  Thus, even where the FDCPA *does* require some kind of initial communication, it would not have required such communication under these circumstances.

Finally, Plaintiff claims in Count II that CACi collected or attempted to collect late fees it was not entitled to collect, in violation of section 1692f(1) of the FDCPA.  Doc. 26 at ¶ 39(b).  The Second Amended Complaint is devoid of a single allegation referencing a "late fee," and Plaintiff has failed to produce any evidence whatsoever that CACi ever attempted to collect any such fee.  Further, Plaintiff has admitted that the only basis of this allegation is mere conjecture.  DSMF 59.  In his deposition, Plaintiff testified:

> Q      What is the basis or in your own words, what is the basis for your allegation that CACi collected or attempted to collect late fees that it was not entitled to collect?
>
> A      Part of the debt that they're looking for was late fees.  They were attempting to collect part of that as well.
>
> Q      Okay.  And how did you know that it was late fees that they were attempting to collect?
>
> A      It's usually always on there as a late fee.
>
> Q      Okay.  Did you see something that said the words late fees or something similar?
>
> A      I did not.  I did not.  But it's kind of, you know...
>
> Q      So is it fair to say that you believe that it's common for them to to collect late fees and so you were surmising or guessing in this case that they -- part of what they were collecting was late fees?
>
> A      I'm surmising that they borrowed from a third party and part of that was late fees, and that's – they were going after that as well, yes.
>
> Q      Okay.  But that actually, then, is a guess on your part based on your understanding of normal practices; is that right?
>
> A      Correct.

Exhibit 3 at 41:16-42:15.  While Plaintiff's guess – or "information and belief" allegation, perhaps – may have provided sufficient support to survive a motion to dismiss under Rule 12(b)(6), as a matter of law, this testimony demonstrates Plaintiff cannot meet his burden to prove the fact he alleges, here, at summary judgment or at trial.

Plaintiff's allegations in Count II, ¶ 39(a) and (b) of the Second Amended Complaint are unsupported by the facts and the law applicable to this case.  CACi is entitled to judgment on these claims as a matter of law.

**CONCLUSION**

Based on the evidence, no reasonable factfinder could find in Plaintiff's favor as to any of his causes of action.  The undisputed facts demonstrate CACi did everything it could be expected to do in response to his Account and his dispute.  CACi is entitled to summary judgment on all of Plaintiff's claims and causes of action.

WHEREFORE, Defendant Consumer Adjustment Company, Inc., respectfully requests this Court enter judgment granting Defendant's Motion for Summary Judgment, award its fees and costs incurred herein, and dismiss all Plaintiff's claims with prejudice.

**(SIGNATURE AND SERVICE ON FOLLOWING PAGE)**

Dated: May 23, 2022                    Respectfully Submitted,

                                       **MALONE FROST MARTIN PLLC**
                                       *Attorneys for Defendant*

                                       By:/s/ MATTHEW J. BELL
                                       Matthew J. Bell, Mo. Bar # 67241
                                       1200 S. Big Bend Blvd.
                                       St. Louis, Missouri 63117
                                       mbell@mamlaw.com
                                       P: (314) 669-5490
                                       F: (888) 632-6937
                                       *Admitted Pro Hac Vice*

                                       By: /s/ L. JACKSON YOUNG, JR.
                                       L. Jackson Young, Jr. (ASB-7946-G65L)
                                       1122 Edenton Street
                                       Birmingham, Alabama 35242
                                       jyoung@my-defense.com
                                       p: (205) 879-8722
                                       F: (205) 879-8831

                                       *Attorneys for Defendant Consumer*
                                       *Adjustment Company, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2022, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

Earl P. Underwood , Jr.
*Underwood & Riemer, PC*
Email: epunderwood@gmail.com

Steven P Gregory
*Gregory Law Firm, P.C.*
Email: steve@gregorylawfirm.us

ATTORNEYS FOR PLAINTIFF

                                       /s/ Matthew J. Bell