IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

DANNY N. BRITTINGHAM,

    PLAINTIFF,

VS.

CONSUMER ADJUSTMENT COMPANY, INC.,

    DEFENDANT.

Case No.: 1:21-cv-00096-MU

### PLAINTIFF'S STATEMENT OF FACTS AND LEGAL MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff and, in response and opposition to the Motion for Summary Judgment filed by Defendant Consumer Adjustment Company, Inc. ("CACi") submits the following:

### INTRODUCTION

In April of 2020, Plaintiff received a notification from a credit monitoring service, Credit Karma, that Midwest Recovery LLC ("Midwest") reported derogatory information about him on his credit reports. According to Credit Karma, Midwest claimed that Plaintiff's debt with National Payday Loans was delinquent. However, Plaintiff never had an account with Midwest or with National Payday Loans.

After receiving this notification, Mr. Brittingham went online to check his credit score and credit report and verified that CACi, masquerading as Midwest at the time, was falsely reporting

an open "account in collection" of $444.00 with the original creditor listed as "National Payday Loans."

According to the Federal Trade Commission ("FTC"), Midwest operated a scheme to collect phantom debts by "parking" bogus debts and derogatory information on consumers' credit reports, including Mr. Brittingham's. This practice was the subject of an enforcement action brought by the FTC in the Eastern District of Missouri, Case number 4:20-cv-01674 on November 25, 2020. According to that Complaint, (Ex. One) Midwest and others:

> [O]perated a third-party debt collection business that pursues consumers for alleged debts, including debts that consumers do not actually owe. Defendants collect phantom payday lending debts, purported medical debts, and other debts that Defendants are consistently unable to verify. Since at least 2015, Defendants have reported to the CRAs more than $98 million in unauthorized or counterfeit payday loans, debts subject to unresolved fraud claims, debts in bankruptcy, debts in the process of being re-billed to a consumer's medical insurance, and even debts that consumers already paid to Defendants. Defendants have continued to collect millions of dollars' worth of these alleged debts despite being inundated with thousands of consumer complaints each month.

The derogatory credit reporting was also false because the debt at issue had been sold to CACi and was no longer owned by Midwest. On or about September of 2019 the assets of Midwest were sold to CACi in a private transaction, and CACi continued the practices of Midwest in the same or similar fashion. CACi continued to collect debts using the name "Midwest Recovery Systems, LLC," despite the transfer of the debts at issue from Midwest to CACi. The Motion for Summary Judgment is due to be denied for several reasons as further set out below.

## STATEMENT OF RELEVANT FACTS AND EVIDENTIARY SUBMISSION

1.  In April of 2020, Plaintiff received a notification from Credit Karma that Midwest Recovery, LLC ("Midwest") reported derogatory information about him on his credit report,

stating that Plaintiff's debt with National Payday Loans was delinquent. Plaintiff never had an account with Midwest or National Payday Loans, and, therefore, did not owe either of them anything. Ex. Two [Brittingham-CACi 000059, 000100, and 000105].

2. In June 2020, Mr. Brittingham filed a written dispute with Equifax and TransUnion regarding Midwest's Credit reporting. [Ex. Three Brittingham Dep. at p 26.]

3. Equifax deleted the Midwest account. However, TransUnion did not delete the account and was still reporting it at the time this case was filed. *Id.*

4. Because of the actions undertaken in the name "Midwest," Plaintiff filed Suit in February of 2021, naming Midwest as Defendant. At that time Plaintiff was unaware of the existence of CACi. [See Ex. Four Original Complaint].

5. The derogatory credit reporting was false because the debt at issue had been sold to CACi and was no longer owned by Midwest as the assets of Midwest ha for collection pd been purchased by CACi in September of 2019. [Ex 5 Deposition of Roger Weiss Page 14, Line 1-6]. See Ex. Five. Also, See also Ex. Six [Docket Sheets found on Pacer indicating use of the name Midwest after the asset sale to Caci].

6. CACI continued to masquerade as Midwest even after this Suit was filed as evidenced by its initial (false) Corporate Disclosure Statement in this case. See Doc 11.

7. Despite the September 2019 transfer of the debts at issue from Midwest to CACi, CACi continued collecting debts using the name "Midwest Recovery Systems, LLC". [Deposition of Roger Weiss Page 37 Line 8-23]. See Ex. Five. Also, see also Ex. Six (Docket sheets).

8. CACi also made false statements in its initial Corporate Disclosure Statement filed on May 17, 2021. See Doc. 11. CACi continued to misrepresent its identity to the court and Plaintiff until July 8, 2021. See Doc. 21. CACi also masqueraded as Midwest in at least the cases listed in Ex. Six.

9. After the revelation that the defendant had been lying about its identity, both to Plaintiff and the Court, "CACi," eventually acknowledged ownership of the alleged debt. Accordingly, Plaintiff filed a Joint Stipulation to Substitute Party Defendant, Change Case Caption, and Dismiss Defendant Midwest Recovery Systems, LLC on July 8, 2021 [Doc 21]. An Order was filed Granting the Joint Stipulation on July 13, 2021 [Doc Number 23].

10. According to Weiss, the name "Midwest" which was reported to consumer reporting agencies, was not changed when the accounts from Midwest were put into CACi's system because it was too much trouble. Specifically, Weiss said CACi continued collecting using the name Midwest because, "we continued business under that moniker until we were ready to move business over, which that's a pretty heavy lift when there's several clients and electronic files and file formats and testing, so that's how we ran business." Ex. Five. Deposition of Roger Weiss pp 37-38.

11. CACi eventually moved into the former offices of Midwest. See Ex. Five, Deposition of Roger Weiss Page 9 Line 10-11.

12. Mr. Weiss also testified that the debt at issue did not belong to CACi but belonged to O'Brien Wexler, a "debt buyer." See Ex. Five, Deposition of Roger Weiss pp 31-32. Weiss went on to say that CACi stopped doing business with O'Brien Wexler in October 2020 because O'Brien

4

Wexler had difficulty or was unable to verify debts it had placed with CACi for collection. *Id*. at p 48 10-22.

13.     It wasn't until the middle of 2021 that CACi changed its credit reporting practices and began attempting to contact the consumers before reporting derogatory remarks on their credit reports [Ex. Five. Deposition of Roger Weiss Page 51 Line 10-16 and Page 63 Line 9-22].

14.     On July 26, 2021, Plaintiff filed a Second Amended Class Action Complaint, naming CACi as Defendant. See Doc 26.

## LEGAL ARGUMENT

**A.     THE DEFENDANT DOES NOT AND CANNOT MEET ITS HIGH BURDEN OF PROOF.**

The burden of proof in the present case is substantial, requiring the Defendant to meet a high threshold in order to obtain summary judgment. The standard of review for a motion for summary judgment is well-established in the Eleventh Circuit. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir. 1990)).

The Eleventh Circuit has consistently held that the Court's role at this stage is not to weigh evidence or determine credibility, but rather to determine whether there is a genuine dispute of material fact that necessitates a trial (*Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)). Any doubts regarding the existence

of genuine issues of material fact must be resolved in favor of the non-moving party (*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Feliciano*, 707 F.3d at 1252).

Furthermore, it is essential to highlight that the Defendant bears the burden of proof in seeking summary judgment. The Eleventh Circuit has consistently adhered to the Supreme Court's precedent that the moving party has the burden of establishing the absence of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. at 323; *see also Pritchard v. Southern Co. Servs., Inc.*, 92 F.3d 1130, 1133 (11th Cir. 1996)). This burden requires the Defendant to present evidence that, when viewed in the light most favorable to the Plaintiff, demonstrates the absence of a genuine dispute (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Mere allegations or denials in the pleadings are insufficient to meet this burden (*Id*. at 248).

The burden on the Defendant is particularly weighty at the summary judgment stage, as it necessitates the presentation of evidence that would be admissible at trial and sufficiently establishes each element of the defenses asserted (*Adickes v. S.H. Kress & Co.*, 398 U.S. at 157; *see also Damon*, 196 F.3d at 1358). The Eleventh Circuit has emphasized that it is not the Court's role to weigh conflicting evidence or make credibility determinations, but rather to assess whether the Defendant has met its burden by presenting evidence that would permit a reasonable jury to find in its favor (*Tolan v. Cotton*, 572 U.S. at 656; *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010)).

In light of the foregoing, the Plaintiff respectfully submits that the Defendant has failed to satisfy its burden of proof to justify the grant of summary judgment. Material issues of fact remain

unresolved, and the Defendant's motion must be denied. The Plaintiff requests that this Honorable Court carefully consider the applicable standard of review and the substantial burden of proof on the Defendant when evaluating the present motion.

**B.    THE EVIDENCE SUPPORTS THE PLAINTIFF'S FCRA CLAIM.**

CACi argues (1) that its reporting was accurate; (2) the Plaintiff suffered no recoverable damages and (3) there is no evidence of willfulness to support the punitive damages claims. None of these arguments have merit because CACi:

1.    Falsely and intentionally reported the bogus debts to credit bureaus using the name Midwest;

2.    Attempted to coerce Mr. Brittingham into paying the bogus debt by parking it on his credit report, and,

3.    Notwithstanding representations CACi made in its statement of facts, CACi verified the accuracy of the bogus debt when Plaintiff filed his dispute with TransUnion. The debt was "verified as accurate" by CACi even though it was falsely reported under the name of Midwest on July 20, 2020. See Doc 62.1, Ex 11, CACi 0014. Filed under seal.

Under the FCRA, when a consumer disputes information with a credit reporting agency, the entity furnishing the information must "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1). The purpose of that investigation is to reach one of three potential ending points: "verification of accuracy, a determination of inaccuracy or incompleteness, or a determination that the information cannot be verified." *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016) (citation and internal quotation

marks omitted). The investigation must be "reasonable" and the Eleventh Circuit has opined that "'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s-2(b)."*Id. Diehl v. Money Source, Inc.,* 2018 WL 2995721, at *7 (S.D. Ala. June 13, 2018). See also, *Arianas v. LVNV Funding LLC.*, 132 F. Supp. 3d 1322, 1326 (M.D. Fla. 2015) (" If a furnisher receives notice of a customer's dispute from a credit reporting agency, the furnisher is required to conduct "a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir.2004)")"

Under Section 1681n(a), a person who willfully fails to comply with any requirement imposed under Section 1681s-2(b), is liable to the consumer for actual, statutory, or punitive damages. *Collins v. Experian Info. Solutions*, 775 F.3d 1330, 1336 (11th Cir. 2015). Obviously, the fact that CACi continued to report the loan in arrears when it knew, or should have known, that the loan was bogus (that is, that ***it never existed at all***), supports a willfulness claim under Section 1681n.

A violation is willful where the furnisher either knowingly or recklessly violated the requirements of the Act. *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) (citing *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 56-57 (2007)). Willfulness is established with evidence that a furnisher verified credit information that it knew, or should have known, was either false or unverified by its records. *Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1307 (11th Cir. 2016) (A reasonable jury could find that Midland either knowingly or recklessly reported debts as "verified" without obtaining sufficient documentation to support that determination). Here, CACi knew or should have known, that the debt was nonexistent (and it is

estopped from arguing otherwise) when it verified the information. This is a sufficient basis for a jury to find a willful violation of the FCRA.

Finally, the FCRA allows for the recovery of pecuniary and non-pecuniary actual damages. *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1124 (11th Cir. 2006)("[a] claim for actual or compensatory damages under FCRA may include compensation for emotional distress in the absence of physical injury or out-of-pocket expenses"). See also *Seamon v. Vaughan*, 921 F.2d 1217, 1219 (11th Cir. 1991) ("The parties may not contradict federal law by private agreement").

C.   **THE EVIDENCE ALSO SUPPORTS PLAINTIFF'S FDCPA CLAIM.**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors...." 15 U.S.C. § 1692(e). The FDCPA is a remedial statute, and its provisions are to be liberally construed in favor of consumer debtors. *Agrelo v. Affinity Mgmt. Servs., LLC,* 841 F.3d 944, 950 (11th Cir. 2016); *Bandy v. Midland Funding LLC,* 2013 WL 210730, *5 (S.D. Ala. Jan. 18, 2013). The FDCPA forbids certain conduct by debt collectors, including collecting amounts not owed and making false representations in connection with the collection of any debt. 15 U.S.C. § 1692e and 1692f(1).

The collection or attempted collection of the unowned amounts is a violation of 15 U.S.C. § 1692f(1). See, e.g., *Justice v. Ocwen Loan Servicing*, No. 2:13-CV-165, 2015 WL 235738, at *11 (S.D. Ohio Jan. 16, 2015) (Ocwen, a debt collector, violated the FDCPA when it attempted to collect amounts in excess of those due under a loan modification).

9

The FDCPA also prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C.A. § 1692e(8). At all relevant times, CACi knew, or should have known, that any information reported to the credit bureaus indicating that the debt at issue arrears was false. Yet CACi continued to report the bogus loan. This false representation is a violation of FCRA Section 1692e(8). *See*, e.g., *Hinkle v. Midland Credit Mgmt., Inc.*, CV 313-033, at *17 (S.D. Ga. Jan. 6, 2015) ("Debt collectors may not falsely represent the character, amount or legal status of any debt, nor may they communicate to any person credit information which is known or which should be known to be false, including the 'failure to communicate that a disputed debt is disputed.,'").

The FDCPA further prohibits collecting under a false name. The plain language of the FDCPA states in Section 807, codified at 15 U.S.C. Section 1692e(14), that it is false or misleading for a debt collector to use "any business, company, or organization name other than the *true name* of the debt collector's business, company, or organization." (Emphasis added.) *See Leonard v. Zwicker & Assocs., P.C.*, No. 17-10174, at *7 (11th Cir. Nov. 1, 2017) ("[T]he FDCPA prohibits a debt collector from using any name' other than the true name of the debt collector's business, company, or organization.' 15 U.S.C. § 1692e(14)")).

CACi's "true name" is Consumer Adjustment Company, Inc., and it from time to time also uses the acronym CACi, as both Plaintiff and Defendant have done in these submissions. CACi is not, however, Midwest, Midwest Recovery Systems, or Midwest Recovery Systems, LLC. CACi alleges that, through an Asset Purchase Agreement, it bought the "DBA" name of Midwest Recovery. *See* Weiss Dep., p. 37, ll. 14-22. But for a debt collector to use any name aside from its

10

"true name," for example, a "DBA name," or "trade name," the debt collector must have registered the DBA or trade name with any state in which it conducts business. CACi has not registered the name "Midwest Recovery" or any variation thereof as a trade name or d/b/a name with the Alabama Secretary of State. *See* Exhibit \*, Business Entity Record, https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=000574279&page=name&fi. Moreover, CACi has not even asserted here that it ever registered Midwest Recovery as a trade name, whether in Alabama or anywhere else. "Midwest Recovery Systems, LLC" remains registered with the Alabama Secretary of State, but Roger Weiss testified that neither he nor CACi owns that LLC. *See* Weiss Dep., p. 37, ll. 14-22. CACi appears to have proceeded under the legally insufficient assumption that if it contracted with Midwest Recovery Systems, LLC, to use the name "Midwest Recovery" as a DBA name or trade name, that also conferred the *legal* right to use the name to collect debts. It did not. "If [a] statute is otherwise within the powers of Congress, [], its application may not be defeated by private contractual provisions." *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986)." *United States v. Blue Cross/Blue Shield of Alabama*, 999 F.2d 1542, 1547 (11th Cir. 1993)

      Here the "least sophisticated consumer" standard applies to the confusing, deceptive, indeed, fraudulent, use by CACi of the Midwest name. *See Pinson v. JPMorgan Chase Bank, Nat'l Assoc.*, 942 F.3d 1200, 1209 (11th Cir. 2019) ("We now join the Second and Seventh Circuits and hold that the false-name exception applies when the 'least sophisticated consumer' would believe a third party was involved in collecting a debt."). The least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice

with some care." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-94 (11th Cir. 2010). The collection notice should be clear enough that a naïve consumer comes away from the notice understanding the identity of the creditor. *See Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012). Moreover, the question of whether the least sophisticated consumer would be confused or misled by a debt collector's communication is one for the jury. *Miljkovic v. Shafritz & Dinkin*, *P.A.*, 791 F.3d 1291, 1307 n.11.

In a 2018 decision from the Third Circuit, the Court found that a debt collector violated the FDCPA by leaving a voicemail identifying itself as "ARS" instead of its real name. "Healthcare Revenue Recovery Group, LLC. "*Levins v. Healthcare Revenue Recovery Grp. LLC*, No. 17-333 2018 WL 3999888, at*1 (3rd Cir. Aug. 22, 2018). *Id*. Healthcare Revenue Recovery Group, LLC claimed that its voice message was not false or misleading under the FDCPA because it did have a registered d/b/a in that state for the name "ARS Account Resolution Services," so it moved to dismiss the debtor's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.*

The *Levins*' Court adopted the FTC's guidance regarding the "true name" requirement of § 1692e(14) to permit a debt collector to "use its full business name, the name under which it usually transacts business, or a commonly-used acronym," as long as "it consistently uses the same name when dealing with a particular consumer." *Id*. at *4.

Against this backdrop, the court disagreed with the defendant's argument that its use of "ARS" in debt collection voice messages to the debtor was permissible as its "true name" because "ARS" was not Healthcare Revenue Recovery Group, LLC's full business name, and it was not the name under which it usually conducted business or a commonly used acronym of "ARS

12

Account Resolution Services." Id. at *4. Instead, the Court found, Healthcare Revenue Recovery Group, LLC did not have a d/b/for the stand-alone name "ARS," and a search for "ARS" identifies a plethora of other debt collectors other than Healthcare Revenue Recovery Group, LLC. *Id.* Accordingly, the court found that the debtor was able to state a claim for violation of Section 1692e(14).

The facts in the present case point to even clearer liability for CACi than those of *Levans*. Here, CACi has not even argued that it registered any DBA name similar to Midwest Recovery in Alabama, nor has it argued that Midwest Recovery is its "true name."

For these reasons, CACi is not entitled to summary judgment.

## CONCLUSION

For all the reasons stated above, the Defendants' Motion for Summary Judgment is due to be denied.

Respectfully submitted this the 31st day of May 2023

| | |
|---|---|
| /s/ Earl P. Underwood, Jr.<br>EARL P. UNDERWOOD, JR.<br>Attorney at Law<br>516 Third St.<br>Fairhope, Alabama 36532<br>Telephone:    251-279-0054<br>Facsimile:    251-990-0626<br>epunderwood@alalaw.com<br>Attorney for Plaintiff | /s/Steven P. Gregory<br>Attorney for Plaintiff<br>ASB-0737-R73S<br>GREGORY LAW FIRM, P.C.<br>505 N. 20th Street<br>Suite 1215<br>Birmingham, Alabama 352403<br>Telephone 205-208-0312<br>email: steve@gregorylawfirm.us |

13

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed using the CM/ECF system, which will send a notification to all Counsel of record this 31st day of May 2023.

*/s/ Earl P. Underwood, Jr.*
**Earl P. Underwood, Jr.**

14