UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| DANNY N. BRITTINGHAM, | § | |
| | § | |
| *Plaintiff,* | § | CASE NO. 1:21-cv-00096-MU |
| | § | |
| v. | § | **Response Brief in Opposition to** |
| | § | **Class Certification** |
| CONSUMER ADJUSTMENT COMPANY, | § | |
| INC., | § | |
| | § | |
| *Defendant.* | | |

---

## RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

---

COMES NOW, Defendant, Consumer Adjustment Company, Inc. ("CACi" or "Defendant"), by and through undersigned counsel, and in opposition to the Renewed Motion for Class Certification of Plaintiff, Danny Brittingham ("Plaintiff"), CACi states:

### INTRODUCTION AND STATEMENT OF FACTS

Plaintiff asks this Court to certify a massive, loosely-defined class based on CACi's unpled, lawful conduct, and despite failing to allege that the class members have suffered a single injury. Setting aside the fact that Plaintiff – between his Second Amended Complaint, deposition testimony, and class certification motion – cannot seem to articulate a consistent claim for relief, Plaintiff fails to *allege* enough information to support class certification, much less meet his burden to *prove* that it does.  Under Fed. R. Civ. P. 23 and the relevant case law, Plaintiff's class falls far short of certifiability.  His motion should be denied.

a.    *Background*

The allegations involve a debt account serviced by Defendant Consumer Adjustment Company, Inc. ("CACi"), doing business under the name "Midwest Recovery Systems, LLC"

("Midwest"), for original creditor National Payday Loans ("the Account"). Prior to the events alleged in the Complaint, CACi, a debt collector, by and through an asset purchase agreement dated September 1, 2019, had acquired the assets of another collector, Midwest Recovery Systems, LLC ("Midwest"). Pltf Ex. 2 at 14:4-6; Ex. A at ¶ 7; MSJ Ex. 10.[1]   Under the asset purchase agreement, CACi acquired the assets of Midwest, including the right to do business under Midwest's name, as well as Midwest's contractual relationship with various creditors and debt buyers. Pltf Ex. 2 at 14:10-14, 65:5-8; MSJ Ex.10 at § 1.

Through one of those contractual relationships, CACi was assigned the Account by debt buyer O'Brien Wexler & Associates in April of 2020. Pltf Ex. 2 at 31:2-7; Ex. A at ¶ 20. At the time of assignment, the information in Midwest's systems indicated Plaintiff Danny Brittingham had had two previous accounts serviced by Midwest prior to CACi's asset purchase. Pltf Ex. 2 at 41:16-42:8; Ex. A at ¶ 24. The majority of the remaining facts and allegations support causes of action that are entirely irrelevant to this class, but for the purpose of responding to Plaintiff's motion, the Court should know the following: (1) CACi reported the Account to the credit reporting agencies ("CRAs"), and (2) it did so, pursuant to the contractual rights mentioned above, under the name "Midwest Recovery Systems, LLC." *See* Pltf's Ex. 1, Doc. 90-1. Plaintiff proceeded to lodge a dispute with the CRAs, claiming he did not owe the debt. Ex. A at ¶ 28. CACi investigated the Account, and, after the debt's owner did not respond to requests for validation information, proceeded to delete its reporting. Pltf Ex. 2 at 33:3-7, 66:7-21; Ex. A at ¶ 32.

---

[1] This exhibit label refers to a document that was filed under seal with this Court's leave. Rather than request a second sealing of an exhibit, CACi requests the Court consider the sealed exhibit attached to CACi's Motion for Summary Judgment, which shall be referenced as "MSJ Ex. 10."

b.      *Amendments and Class Allegations*

Plaintiff brought this action under the Fair Credit Reporting Act, 15 U.S.C. § 1682 *et seq.*

("the FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("the FDCPA"),

and common law negligence.  His Second Amended Complaint alleges CACi's conduct violated

various provisions of the FCRA and the FDCPA, and that CACi is liable in common law

negligence.  Specifically, the Second Amended Complaint alleges:

Count I: Violations of the FCRA

- Failing to investigate Plaintiff's dispute of the reporting of false information on his credit report;
- Failing to review all relevant information regarding that dispute; and
- Continuing to submit false information to the CRAs after receiving notice of the dispute.

Count II: Violations of the FDCPA

- Furnishing information to a CRA before communicating with the debtor about the debt;
- Collecting or attempting to collect late fees to which it CACi was not entitled; and
- Providing false information regarding the status of a loan.

Count III: Negligence

- Breaching its duty of care to verify debts were legitimate before beginning collection activity.

Notably, not one of the causes of action alleged in the Complaint has anything to do with CACi's

use of Midwest's business name.

On September 6, 2022, Plaintiff moved for leave to file a Third Amended Complaint.  Doc.

72.  In the proposed amendment, Plaintiff vastly expanded his causes of action.  The new

allegations included what can only be fairly described as "a nefarious plot."  Plaintiff alleged that

CACi was involved in a conspiracy with Midwest, under which CACi would buy Midwest's assets

in order for Midwest's executives to avoid an FTC judgment, at which point CACi would continue

to do all the things Midwest had gotten in trouble for doing in the first place.  Doc. 72-2.  An

essential part of that plot, according to Plaintiff, was for CACi to report its debts under Midwest's name. Doc. 72-2. What Plaintiff believed CACi would accomplish by doing so is anybody's guess.

This Court appropriately denied Plaintiff's motion to amend, leaving the Second Amended Complaint as the operative complaint. That Complaint, as laid out above, contains no cause of action whatsoever tied to CACi's use of the Midwest d/b/a, nor does it allege Plaintiff, much less any other person, was injured by the use of that name. Yet now, in his Motion for Class Certification, Plaintiff boldly attempts to revive his unpled conspiracy theory with a class definition centered around CACi's use of the Midwest name in its credit reporting. In doing so, Plaintiff fails to even *allege* that anyone, including Plaintiff, was in any way injured by the use of the Midwest name, much less make the requisite showing required for class certification. This Court should not permit Plaintiff to accomplish with class certification what he could not with his motion for leave.

Plaintiff's failure to identify a common injury (indeed, to identify *any* injury, to *anyone*) arising from the use of the Midwest name should be more than enough for the Court to deny certification. Plaintiff's motion thus fails to meet multiple prerequisites for certification, most notably commonality and predominance. In addition, he entirely fails to meet his burden to prove numerosity, and his failure to plead any common causes of action between himself and the class members raises serious questions about his ability to fairly and adequately represent the class. This Court should deny Plaintiff's motion for class certification for failing to meet the requirements of Fed. R. Civ. P. 23.[2]

---

[2] CACi may offer additional facts and evidence thereof throughout the argument section of this brief.

## RESPONSE TO STATEMENT OF RELEVANT FACTS

1.     UNDISPUTED.

2.     DISPUTED:  CACi disputes that Plaintiff "never had an account with Midwest or National Payday Loans, and, therefore, did not owe either of them anything."  The exhibits cited by Plaintiff establish only that the underlying account was reported to the Credit Reporting Agencies ("CRAs"), ***not*** that he did not owe the debt.  Indeed, the only proof Plaintiff has ever proffered to support his allegation that he did not owe the debt has been his own, self-serving testimony.

3.     DISPUTED.  CACi admits that it purchased Midwest's assets and moved into its former office space, and disputes every other factual allegation in this paragraph.  Plaintiff claims that the debt reporting was indisputably "false," and that the account had been sold to CACi in September of 2019.  Neither of these allegations are true.  The cited testimony shows that CACi did, indeed, purchase the assets of Midwest Recovery Systems LLC ("Midwest"), and that CACi moved into Midwest's former office space.  It does not support the allegation that Plaintiff's debt account was purchased in that acquisition, as the account was actually placed with CACi for collection as an agency, by one of Midwest's former debt-buyer clients, after the acquisition.  *See* Pltf. Ex. 2 at 64:18-65:8.  And none of the cited testimony even raises the *inference* that the reporting was false, much less that that falsity is "undisputed."  In fact, in the passages cited by Plaintiff, here, Mr. Weiss specifically testified that he was unaware of any evidence that showed the debt was not valid – only that the debt buyer had failed to provide validation information.  Pltf. Ex. 2 at 32:19-33:7.

4.     DISPUTED.  CACi disputes that the "debts at issue" were transferred from Midwest to CACi, as, for the reasons laid out in CACi's response to Paragraph 3, above, Plaintiff's

debt was not transferred from Midwest, nor is Plaintiff's class definition limited to accounts that were transferred from Midwest.  CACi admits that, pursuant to its contractual rights acquired in the asset purchase, CACi did business under Midwest's name for a period of time while its records and systems were still being integrated.  Pltf. Ex. 2 at 37:7-38:5; 40:19-23, 65:5-8; MSJ Ex. 10 at § 1.

5.      DISPUTED.  CACi disputes that it "masqueraded" as Midwest, in that CACi had the legal right to do business under Midwest's name after it purchased Midwest's assets.  Pltf. Ex. 2 at 37:7-38:5, 40:19-23, 65:5-8; MSJ Ex. 10 at § 1.

6.      DISPUTED as to characterization, as Plaintiff's "discovery of the identity of the proper party" occurred because defense counsel *informed* Plaintiff of the error and joined him in a motion to substitute parties.

7.      UNDISPUTED.

8.      DISPUTED as to characterization, only.  The practice of furnishing information to the CRAs without first communicating with the debtor was not a violation of any law or agency rule until the passage of Regulation F by the CFPB in 2022.

9.      UNDISPUTED.

10.     DISPUTED.  Weiss never admitted to "debt parking," especially not as Plaintiff defines that term in Paragraph 1 of its Statement of Relevant Facts.  The cited testimony shows that, before (approximately) the middle of 2021, CACi would "contact the credit bureaus about consumers before communicating with the consumer about the debt."  Pltf. Ex. 2 at 51:10-13.  This testimony is a far cry from an admission to "debt parking," which Plaintiff defines as reporting "counterfeit payday loans and other debts to credit bureaus with the expectation that consumers would be forced to pay these bogus debts to obtain a home or car loan."  Pltf. Br., *supra* at ¶ 1.

11.     DISPUTED.  Of all of Plaintiff's misstatements concerning the evidence in this case, this is perhaps the most transparent.  Interrogatory No. 14 asked CACi to state "the number of persons located in Alabama whose credit information was communicated to Experian, Equifax or Trans Union by Midwest Recovery Systems, Inc., and/or CACi; (3) within the three years prior to the filing of this Action."  Pltf. Ex. 3 at p. 4.  On its face, this interrogatory response has nothing to do with "false" reporting, nor is that number limited to accounts that were reported by CACi under Midwest's name, as is relevant to Plaintiff's class definition.  The interrogatory response merely states that both/either Midwest and/or CACi communicated credit information about a total of 52,164 individuals to the CRAs in the State of Alabama during the relevant time period, a characterization that is confirmed by the very deposition excerpt cited by Plaintiff, here.  Pltf. Ex. 2 at pp. 36-37.

## ARGUMENT

### a.     Class Definition

As a threshold matter, Plaintiff's pled class definition, in the Second Amended Complaint, is materially different from the definition from his certification motion.  In the Second Amended Complaint, Plaintiff defined the class as "all persons during the class period who were (1) residents of the United States; (2) whose credit information communicated to Experian, Equifax or Trans Union or other consumer reporting agency, by CACi; (3) within two years before the filing of this Action."  Doc. 26 at ¶ 45.  The new definition proffered, for the very first time in his class certification motion, is: All persons who were (1) residents of the United States; (2) whose credit information was communicated to Experian, Equifax, TransUnion, or other consumer reporting agencies, by CACi **using the name Midwest Recovery Systems** between September 1, 2019, and September 30, 2020."  Doc. 90 at p. 1 (emphasis added).

This class definition is substantially different, and is changed without adequate notice to CACi. Indeed, the definition does not even reflect any of Plaintiff's causes of action in the operative Complaint. CACi has not been able to conduct opposition discovery based on this definition or theory of recovery. The Court should not permit Plaintiff to essentially amend his Complaint in his class certification motion. As such, CACi requests the court consider Plaintiff's well-pleaded class definition, from the Second Amended Complaint, rather than his new definition. And that definition – which includes every single person whose credit information was reported by CACi during the specified period – is obviously overbroad, undefined, and not tied to any cognizable legal injury.

While the Court should deny class certification on that basis, alone, should the Court consider Plaintiff's updated definition, the remainder of this Brief shall demonstrate the many fatal deficiencies of that definition in light of Plaintiff's operative pleading and the evidence available.

**b.    Standard for Class Certification**

In order to certify a class action, "the party seeking certification must demonstrate, first, that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class."

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id*. In this case, Plaintiff relies upon Rule 23(b)(3), which requires the movant to prove that common questions of law or fact

"predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23

From the very start, Plaintiff misstates the standard for class certification, claiming,  based on a treatise and a 1974 case, that the Court must accept all his allegations as true and resolve all doubts about certification in his favor.  Doc. 90 at p. 6.  The Eleventh Circuit has made it utterly clear that these standards are erroneous, recently saying a district court "misstated the law" when it claimed doubts must be resolved in the movant's favor and that all allegations must be accepted as true.  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233-1234 (11th Cir. 2016).[3]

Instead, the court explained, "[t]he party *seeking* class certification has the burden of proof[, and] the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Id.* at 1233 (emphasis in original). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation."  *Id.*  Thus, "[t]he party seeking class certification has a burden of *proof*, not a burden of pleading." *Id.* at 1234 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014))(internal quotations omitted)(emphasis in original).  The movant must therefore "affirmatively demonstrate his compliance with Rule 23 by proving that the requirements are *in fact* satisfied."  *Id.* (citing *Dukes*, 564 U.S. at 346) (internal quotations omitted) (emphasis in original).  "[T]he district court must conduct a rigorous analysis to determine whether the movant carried his burden, which will frequently entail overlap with the

---

[3] Indeed, regarding one of Plaintiff's quotes concerning the standard for class certification – that the motion's "factual allegations, though not its legal conclusions, must be accepted as true" – the court is not even referring the standard for class certification, but for a Rule 12(b)(6) motion.  *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1334 (11th Cir. 2015).

merits of the plaintiff's underlying claim." *Id*. (quoting *Dukes*, 564 U.S. at 350-51) (internal quotations omitted). The court looks to the merits "to the extent they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. (internal quotations omitted). "But if a question of fact or law *is* relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." *Id*. (emphasis in original).

### c.   Numerosity

Under the standard outlined above, Plaintiff plainly fails to provide the Court with enough – indeed, any – evidence or information to meet its burden to prove numerosity. "Although a plaintiff need not show the precise number and identity of class members, mere speculation as to the number of parties involved and general allegations of numerosity are insufficient to satisfy Rule 23(a)(1)." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1196 (S.D. Fla. 2020) (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir.)). "To satisfy this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Id*.

As discussed in CACi's responses to Plaintiff's facts, above, the number Plaintiff uses to estimate the number of class members is formed from a baseless mischaracterization of the evidence. In his motion, he states that CACi's discovery and deposition responses "indicated that in Alabama alone, the Class includes 52,164 consumers." Doc. 90 at p. 9. This is simply false. As the Court can see from the *sources Plaintiff cites*, that number represents the total "number of number of persons located in Alabama whose credit information was communicated to Experian, Equifax or Trans Union by Midwest Recovery Systems, Inc., and/or CACi; (3) within the three years prior to the filing of this Action." Pltf. Ex. 3 at p. 4; *see, also,* Pltf. Ex. 2 at 52.

In comparing the interrogatory response utilized by Plaintiff with the class definition, whether in the Complaint or the motion, it is apparent that the interrogatory response has no relationship to the class definition which is directed only to CACi's reporting.  And the interrogatory is phrased in a way that its answer, by the use of the phrase "Midwest Recovery Systems, Inc. and/or CACi," provides no affirmative evidentiary support for even a *single* reporting by CACi (i.e. that number could represent reporting only by Midwest, only CACi, or by both, in any proportion, and under any name).  Thus, when Plaintiff claims "that Class members number, at minimum, in the tens of thousands," he has absolutely no reasonable basis for that belief, and provides the Court with no evidence of any kind whatsoever.  Having failed to provide the Court with even a reasonable estimate of the number of class members, the Court should deny Plaintiff's motion for class certification for failing to meet the requirements of Rule 23(a)(1).

### d.      Commonality

Plaintiffs similarly fails to allege, much less meet his burden, to show common issues of law or fact.  The Supreme Court's analysis in *Dukes* commands courts to conduct a searching inquiry into the facts supporting all the Rule 26(a) prerequisites, including, most-importantly in that case, commonality.  There, the district court certified a class, affirmed by the Ninth Circuit, of female Wal-Mart employees, based upon the claim that allowing their local managers discretion in employment decisions had a discriminatory effect against women.  *Dukes*, 564 U.S. at 344-45. The Supreme Court engaged in a close review of the evidence adduced in the case to determine whether "the class members have suffered the same injury."  *Id*. at 350 (internal quotations omitted).  The Court stressed that Rule 23 "does not set forth a mere pleading standard."  *Id*.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common

questions of law or fact, etc." *Id*. (emphasis in original).  In order to determine if a plaintiff has

met this burden, the Supreme Court held that "sometimes it may be necessary for the court to probe

behind the pleadings before coming to rest on the certification question, [and] that certification is

proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule

23(a) have been satisfied[.]" *Id*. at 350-51 (internal quotations omitted).  This "'rigorous analysis'

will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."

*Id*. at 351.  This is because "[t]he class determination generally involves considerations that are

enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id*.

  With these principles in mind, the Supreme Court proceeded to attempt to "bridge the gap"

between the allegation that (a) one employee had faced discrimination and (b) the allegation that

a class of employees existed who suffered that same injury.  *Id*. at 352-53.  It did so by looking

directly at the evidence adduced in support of class certification, stating that "bridging the gap

requires significant proof that Wal-Mart operated under a general policy of discrimination."  *Id*. at

353 (internal quotations omitted).  The Court analyzed the testimony of the plaintiffs' expert

witness, determining that the testimony "does nothing to advance [the plaintiffs'] case."  *Id*. at 354.

The Court then analyzed Wal-Mart's specific policies, as well as the statistical analysis provided

by a labor economist and a statistician.  *Id*. at 355-56.  After closely reviewing all this evidence,

the Supreme Court concluded:  "Because respondents provide no convincing proof of a

companywide discriminatory pay and promotion policy, we have concluded that they have not

established the existence of any common question."  *Id*. at 359.

  Like the *Dukes* plaintiffs, Plaintiff, here, has completely failed to "bridge the gap" between

the individual claims he has made and the existence of a class.  Indeed, not only has he failed to

produce evidence of a common class injury arising from the use of the Midwest d/b/a – he has

failed to *allege* it.  Taking his class definition at face value, every one of his own articulated "common questions addressed in the instant case" is either unanswered by the defined class or legally irrelevant.  *See* Doc. 90 at 12-13.  "Whether Defendant attempted to, or directed a third party to, collect phantom debts by 'parking' bogus debts and derogatory information on consumers' credit reports[,]" is not addressed by the class, as the class is not limited to "bogus" debts, nor to "phantom" debts, nor to debts that were "parked," but includes *all* debts reported under the Midwest d/b/a.  "Whether Defendant furnished information regarding [the] debt to a consumer reporting agency ('CRA') before communicating with the consumer about the debt" is similarly unanswerable with this class, as, again, it includes all debts, not just those that were reported prior to any communication with the debtor.  And "[w]hether Defendant provided false information regarding the status of a loan" cannot be answered by this class, as it is not limited to "false" debts.

The remaining questions are disconnected both from the law and from Plaintiff's own Second Amended Complaint, and are entirely unrelated to whether "the class members have suffered the same injury." *Dukes*, 564 U.S. at 350.  Whether it is true or not that "Defendant falsely identified itself as Midwest Recovery Systems, LLC, in the course of conducting its debt collection and credit reporting practices[,]" as conclusory as that question is, that conduct simply does not raise the inference of a common *injury*.  While Plaintiff attempts to raise an inference of injury by referring to these class members' debts as "bogus" or "nonexistent," again, the class definition *does not include* any qualification that the debts themselves were not valid debts – indeed, Plaintiff fails to provide any evidence whatsoever that *any* of the class members' debts, including his own, are "bogus."  He then boldly states that "[e]ach Class member was damaged and defamed by CACi's undisputed conduct."  Doc. 90 at p. 13.  ***How?***  Without the aforementioned irrelevant,

unpled allegations (about bogus, phantom, parked, or false debts), none of which are a part of the class definition, plaintiff has described *nothing* that is defamatory or damaging about using a d/b/a in credit reporting information.  The allegations in his motion simply fail to "bridge the gap."

Indeed, Plaintiff's own Complaint and deposition testimony directly contradict the allegation that *he* suffered any injury related to CACi's use of the d/b/a in its credit reporting, much less that an injury was suffered by every person in the United States whose information was reported this way.  Starting with the Complaint, Plaintiff claims he "suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from the credit, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment."  Doc. 26 at ¶ 34.  Yet these alleged injuries are directly tied (and limited) to Plaintiff's *FCRA* allegations, which are solely related to CACi's alleged conduct in responding to his dispute and appropriately modifying or deleting the information it was furnishing, *not* to CACi's use of its d/b/a.  Doc. 26 at ¶ 33-34.  Indeed, no specific cause of action is listed, and no damages whatsoever are alleged, tied to the d/b/a claim Plaintiff raises for the first time in his class certification motion.

Even if the Court were to view Plaintiff's Complaint as liberally as it would view that of a pro se plaintiff, Plaintiff's deposition testimony clearly ties Plaintiff's allegations that CACi provided "false information" to completely different conduct – that of allegedly placing a debt on his credit report that he did not owe:

> Q.    Okay. Thank you. Moving on to Subparagraph C, what is -- in your own words, could you tell me what the basis of your claim under the FDCPA that they provide that CACi provided false information regarding the status of a loan?
>
> A.    I never had a loan with Payday.com, and they were providing information to the credit reports that I did.

Ex. B at 42:16-23.  Indeed, Plaintiff could not have been clearer as to what he meant by "false information" in his Complaint:

> Q.  Okay.  So when you say -- when you make a claim that they provided derogatory information, report; is that right?
>
> A.  That's correct.
>
> Q.  When you claimed that they provided false information, can you tell me why that information was false?
>
> A.  I never had a loan with NationalPaydayLoan.com.
>
> Q.  Okay.  So this debt never existed?
>
> A.  No.

Ex. B at 28:11-22.  The sole source of his alleged "false information" injury, then, is Plaintiff's allegation that CACi reported a debt *that he did not owe*.  As discussed at length, above, the class definition does not include any allegation as to the validity of the debts being reported.  Plaintiff, himself, simply was not injured by the conduct he alleges in the class definition, nor does he even *allege* that he was.

Based upon Plaintiff's own description of his injuries, and the shear breadth of his class definition, Plaintiff has failed to meet his burden to show that his class shares common issues of law or fact.  The Court should deny his motion for class certification for failing to meet the requirements of Rule 23(a)(2).

**e.**     **Typicality and Adequacy**

For many of the same reasons he fails the commonality test, Plaintiff fails to meet his burden to establish that his claims "are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Eufaula Drugs, Inc. v.*

*TDI Managed Care Servs.*, 250 F.R.D. 670, 675 (M.D. Ala. 2008).  To meet this requirement, "the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims."  *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 673 (S.D. Fla. 2012).

First, it is difficult to discuss class members' "claims" when the class definition does not state any claim.  As discussed above, the class definition does not involve any unlawful conduct or legally-cognizable injury.  Despite Plaintiff's frequent use of adjectives like "bogus" and "false," the class definition makes no effort to limit it application to invalid debts.  It applies, instead, to *every* debt reported by CACi under its lawful d/b/a, Midwest.  CACi simply did not break the law when it used its legal business name to report the debts it was servicing, and Plaintiff has not provided a bit of proof to show that anyone was harmed by that practice.

Setting aside these clear threshold problems, as discussed at length in the previous section, *none* of Plaintiff's causes of action have anything to do with the definition of the putative class. His FCRA claims involve how CACi acted in response to his dispute.  Doc. 26 at ¶ 33.  And all his FDCPA claims are based on the allegation that the debt itself, and/or parts of it, were invalid. Doc. 26 at ¶ 39.  Proving his own causes of action simply will not prove any necessary elements of any of the putative class members' potential claims surrounding the d/b/a.

Additionally, for many of the same reasons, again, discussed above, Plaintiff fails to prove he would "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The 'adequacy of representation' requirement is met if the named representatives have interests in common with the proposed class members and the representatives and their qualified attorneys will properly prosecute the class action."  *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989).  As discussed at length above, the operative Complaint bears little to no resemblance

to the presumed claims of the putative class, and Plaintiff has provided no testimony whatsoever that demonstrates he was injured or is entitled to relief on the basis of CACi's us of the Midwest d/b/a. Instead, Plaintiff's interests are in proving CACi violated the FCRA in its response to his dispute, and that its reporting of the debt (if found to be invalid) was not the result of a bona fide error. His ability or inability to prove the class's d/b/a claim will have no impact whatsoever on whether *any* of his claims are proven. This Court should deny his class certification motion for failing to meet the requirements of Rules 23(a)(3) and (a)(4).

**f.    Predominance and Standing**

For reasons similar to those surrounding commonality, Plaintiff has failed to carry his burden to prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Before a district court can certify a class pursuant to Rule 23(b)(3), the plaintiff must demonstrate that common issues predominate over individualized issues." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 696 (S.D. Fla. 2010). Put another way, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009). "To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements." *Brown*, 817 F.3d at 1234. "The district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Id.* "District courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id*. at 1235.

Plaintiff's claims, from the Second Amended Complaint, are:

Count I: Violations of the FCRA

- Failing to investigate Plaintiff's dispute of the reporting of false information on his credit report;
- Failing to review all relevant information regarding that dispute; and
- Continuing to submit false information to the CRAs after receiving notice of the dispute.

Count II: Violations of the FDCPA

- Furnishing information to a CRA before communicating with the debtor about the debt;
- Collecting or attempting to collect late fees to which it CACi was not entitled; and
- Providing false information regarding the status of a loan.

Count III: Negligence

- Breaching its duty of care to verify debts were legitimate before beginning collection activity.

Again, not one of the causes of action alleged in the Complaint has anything to do with CACi's use of Midwest's business name. Following the Eleventh Circuit's command to assess how the parties will prove [the elements of their claims] at trial[,]" quite literally none of the evidence that would be necessary to prove Plaintiff's claims at trial would make relief for the class members any more likely.

And the reverse is true, as well. The class definition includes all people whose debts were reported by CACi under its Midwest d/b/a. Proving that CACi reported his debt under the Midwest name does not prove any of the elements of Plaintiff's causes of action. Indeed, given that the class definition itself does not allege an unlawful act, every single account and debtor in Plaintiff's putative class would have to undergo an individualized analysis in order to establish any liability at all. Those questions would include whether each individual debt was, in Plaintiff's words,

"bogus," and whether CACi's reporting activity caused class members any injury. Neither question is, on its face, a part of the class definition. Those inquiries would thus undoubtedly predominate over shared questions, as answering these individual questions would be the only route for any class member to establish their entitlement to relief.

Finally, given the lack of any injury alleged in the class definition, every class member will have to be individually evaluated to determine whether they have Article III standing. "[T]he fact that many, perhaps most, members of the class may lack standing is extremely important to the class certification decision." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019). "At some point before it may order any form of relief to the putative class members, the court will have to sort out those plaintiffs who were actually injured from those who were not." *Id*. The Eleventh Circuit has stated that, "among the factors that we have directed district courts to consider before certifying a class are how the class will prove causation and injury and whether those elements will be subject to class-wide proof, since [t]he issue of liability . . . includes not only the question of violation, but also the question of fact of injury." *Id*. at 1273. "If many or most of the putative class members could not show that they suffered an injury fairly traceable to the defendant's misconduct, then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether and how to certify a class." *Id*.

The Supreme Court recently clarified the standing inquiry under similar circumstances in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). There, 8,185 class members sued TransUnion under the FCRA, claiming TransUnion failed to use reasonable procedures in ensuring the accuracy of their reporting. *Id*. Specifically, in its credit reports, TransUnion had inaccurately added a designation to the class members' credit reports that indicated they were on the U.S. Treasury Department's list of national security threats. *Id*. at 2201. Of the 8,185 class members,

1,853 had had their reports, which include these designations, disseminated to third-party businesses, while the credit files of the remaining class members were not disseminated. *Id*. at 2200. The Court concluded that those class members whose reports were disseminated had established an injury-in-fact sufficient to confer Article III standing, while the others had not. *Id*.

In reaching its decision, the Court engaged in an extensive inquiry surrounding the class members' alleged injuries. The Court found that "under Article III, an injury in law is not an injury in fact." *Id*. at 2205. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. Thus, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id*. at 2204. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. While tangible harms – such as physical or monetary injuries – almost always confer standing, the Court recognized that "intangible" harms might also confer standing if they bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*.

Applying its analysis, the Court found that the 1,853 class members whose information was disseminated suffered an injury that bore a close relationship to the reputation harm associated with the tort of defamation. *Id*. at 2208. The Court noted that common law defamation included the requirement that "a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *Id*. (internal quotations omitted) (emphasis added). While an exact duplicate of a common-law injury need not be produced, the Court found "[t]he harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled

a 'terrorist'[,] [and thus] bore "a sufficiently close relationship to the harm from a false and defamatory statement." *Id*. at 2209.

Turning to the remaining class members, the Court found that, "[g]iven the absence of dissemination, we must determine whether the 6,332 class members suffered some other concrete harm for purposes of Article III." *Id*.  The Court stated the question as "whether the mere existence of a misleading OFAC alert in a consumer's internal credit file at TransUnion constitutes a concrete injury." *Id*.  And the Court's answer was that it did not.  "The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id*. at 2210.  "In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer." *Id*.

On their face, the class members' alleged claims are nearly identical to, if less dramatic than, the non-disseminated *Ramirez* plaintiffs', except that, here, rather than lack of publication, the claims clearly lack the element of defamation that the statement was actually defamatory.  Even if a third party had viewed the name "Midwest Recovery Services, LLC," and the use of the name "Midwest Recovery Services, LLC" is somehow found to be false, it is immaterial and accordingly not defamatory.  "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." § 559 Second Restatement of Torts.  The use of the name "Midwest Recovery Services, LLC," as opposed to "Consumer Adjustment Company, Inc.," in a credit reporting entry would simply have no reputational or negative impact on anyone.  It is the reporting of the negative debt that can have an impact on a Plaintiff's reputation, not the name of the entity reporting it.  And most importantly, Plaintiff has not alleged, nor can he produce any evidence, that the use of

this name "Midwest Recovery Services, LLC" in its reporting caused Plaintiff or any class member any injury or risk of injury of any kind.

On its face, the class definition does not allege a concrete injury, meaning the Court will be required to make such individualized inquiries as to each and every class account to determine whether the particular class member's case is justiciable under Article III. Such individual questions would clearly predominate over any common questions, which are, as discussed at length, sparse, if not nonexistent. This Court should deny Plaintiff's motion for class certification for failng to meet the requirements of Rule 23(b)(3).

## CONCLUSION

Plaintiff clearly and unequivocally has not met his burden under Rule 23. The allegations and causes of action in his operative Complaint bear little to no resemblance to the class definition he offers, now, and he fails to adequately allege, much less meet his burden to prove, that the class members were injured by CACi's use of a simple d/b/a. Indeed, his class allegations fall far short of the mark, especially in the nearly-complete lack of evidence he offers to "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This Court should deny his motion for class certification.

WHEREFORE, Defendant Consumer Adjustment Company, Inc., requests this Court deny Plaintiff's Renewed Motion for Class Certification, and for such other relief as this Court deems just and proper.

**[SIGNATURES AND SERVICE ON FOLLOWING PAGE]**

Dated: May 31, 2023

Respectfully Submitted,

**MARTIN LYONS WATTS MORGAN PLLC**
*Attorneys for Defendant*

By:/s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mamlaw.com
P: (314) 669-5490
F: (888) 632-6937

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 31, 2023, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

Earl P. Underwood , Jr.                          Steven P Gregory
*Underwood & Riemer, PC*                   *Gregory Law Firm, P.C.*
Email: epunderwood@gmail.com        Email: steve@gregorylawfirm.us


                                                          /s/ Matthew J. Bell