UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| DANNY N. BRITTINGHAM, | § | |
| | § | |
| *Plaintiff,* | § | CASE NO. 1:21-cv-00096-MU |
| | § | |
| v. | § | **Defendant's Reply Brief in Support of** |
| | § | **its Motion for Summary Judgment** |
| CONSUMER ADJUSTMENT COMPANY, | § | |
| INC., | § | |
| | § | |
| *Defendant.* | | |

**DEFENDANT CONSUMER ADJUSTMENT COMPANY, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Consumer Adjustment Company, Inc. ("CACi"), by and through counsel, and in support of its Motion for Summary Judgment, hereby replies to Plaintiff's Response Brief as follows:

### RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS:

1.       DISPUTED:  CACi disputes that Plaintiff "never had an account with Midwest or National Payday Loans, and, therefore, did not owe either of them anything."  The exhibits cited by Plaintiff establish only that the underlying account was reported to the CRAs, ***not*** that he did not owe the debt.  Indeed, the only proof Plaintiff has ever proffered to support his allegation that he did not owe the debt has been his own, self-serving testimony, which he does not cite, here.  Factual positions at summary judgment must be supported by citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

2.       UNDISPUTED.

3.      DISPUTED.  The cited exhibit does not support the allegation in this statement of fact that only Equifax deleted the reporting, nor does it support the allegation that TransUnion did not delete the reporting until after this suit was filed.  Indeed, Plaintiff testified that he noticed the reporting in question was removed from his credit report entirely sometime between June and September of 2020, well before this case was filed in February of 2021.  Ex. 3 at 17:5-11; 26:15-22; 32:15-23.

4.      DISPUTED.  The factual assertions in this statement of fact are not supported by admissible evidence.  *See* Fed. R. Civ. P. 56(c)(A)(2) & Response to PSMF 1, *supra*.[1]  Plaintiff's own Complaint is not evidence.

5.      DISPUTED.  CACi admits that it purchased Midwest's assets, and disputes every other factual assertion in this statement of fact.  The cited testimony shows that CACi did, indeed, purchase the assets of Midwest Recovery Systems LLC ("Midwest").  Pltf. Ex. 5 at 14:1-6.  That material does not support the allegation that Plaintiff's debt account was purchased in that acquisition, as the account was actually placed with CACi for collection as an agency, by one of Midwest's former debt-buyer clients, after the acquisition.  *See* Pltf. Ex. 5 at 64:18-65:8; Ex. 5; Ex.1 at ¶ 19.  And none of the cited testimony even raises the *inference* that the reporting was false.  In fact, Mr. Weiss specifically testified that he was unaware of any evidence that showed the debt was not valid – only that the debt buyer had failed to provide validation information.  Ex. 2 at 32:19-33:7.  Finally, Plaintiff cites to his own Exhibit 6, which is an unsworn document that

---

[1] CACi will refer to its own Statement of Material Facts, attached to its original Motion and Brief, as "DSMF __."  CACi will refer to Plaintiff' Statement of Relevant Facts and Evidentiary Submission as "PSMF __."  CACi will refer to exhibits attached to its original Motion for Summary Judgment and to this Brief as "Ex. __." CACi will refer to exhibits attached to Plaintiff's Response Brief as "Pltf. Ex. __."  CACi will refer to its own opening brief in support of summary judgment, Doc. 86, by docket number or as "MSJ Br. at __."  CACi will refer to Plaintiff's Response Brief, Doc. 92, by docket number or as "Resp. Br. at __."

seems to have been prepared by his attorneys.  Plaintiff's Exhibit 6 is thus obviously inadmissible, and should not be considered by this Court for any purpose.  Fed. R. Civ. P. 56(c)(1)(A), (c)(2); *See Lehrfield v. Liberty Mut. Fire Ins. Co.*, 396 F. Supp. 3d 1178, 1183 (S.D. Fla. 2019) (attorney argument is not evidence).

6.      DISPUTED.  CACi disputes that it "masqueraded" as Midwest, in that CACi had the legal right to do business under Midwest's name after it purchased Midwest's assets.  Pltf. Ex. 2 at 37:7-38:5, 40:19-23, 65:5-8; Ex. 10 at § 1.  Indeed, CACi answered this lawsuit, despite the fact that it named Midwest, and it was CACi's counsel who informed Plaintiff that the wrong party was named.

7.      DISPUTED.  CACi disputes that the "debts at issue" were transferred from Midwest to CACi, as, for the reasons laid out in CACi's response to PSMF 5, above, Plaintiff's debt was not transferred from Midwest, nor are there multiple "debts" at issue in this lawsuit. CACi does not dispute that, pursuant to its contractual rights acquired in the asset purchase, CACi did some of its business under Midwest's name for a period of time while its records and systems were still being integrated.  Pltf. Ex. 2 at 37:7-38:5; 40:19-23, 65:5-8; Ex. 10 at § 1.

8.      DISPUTED.  CACi disputes that it made "false" statements, that it "misrepresented its identity," and that it "masqueraded" as Midwest, in that CACi had the legal right to do business under Midwest's name after it purchased Midwest's assets.  Pltf. Ex. 2 at 37:7-38:5, 40:19-23, 65:5-8; Ex. 10 at § 1.  Indeed, CACi answered this lawsuit, despite the fact that Plaintiff named Midwest, and it was CACi's counsel who informed Plaintiff that the wrong party was named. Finally, the Court should disregard Plaintiff's Exhibit 6 for the reasons stated in CACi's response to PSMF 5, above.

9.      DISPUTED.  As previously stated above, CACi's counsel informed Plaintiff that the wrong party was named and stipulated to the substitution of parties.  Plaintiff's repeated attempts to tacitly accuse CACi's counsel of perjury are frivolous and inappropriate, and misrepresent the sequence of events to the Court, in addition to being entirely unsupported by any evidence whatsoever.  Moreover, there was no "revelation," and CACi did not "lie" about its identity.

10.     DISPUTED.  Weiss's testimony – indeed, the very passage cited by Plaintiff – was as follows.

> [F]or continuity of business and we wanted to make sure that we got everything right in the transfer of information from their collection system into CACi's collection system we ran dual systems for about a year because I owned the DBA of MRS, we continued business under that moniker until we were ready to move business over, which that's a pretty heavy lift when there's several clients and electronic files and file formats and testing, so that's how we ran business.

Pltf. Ex. 5 at 37:16-38:2.  Plaintiff's characterization of the use of the name because changing it would be "too much trouble" is inaccurate and misleading.

11.     UNDISPUTED.

12.     UNDISPUTED.

13.     DISPUTED as to characterization, only ("[i]t wasn't until the middle of 2021 . . .").  The practice of furnishing information to the CRAs without first communicating with the debtor was not a violation of any law or agency rule until the passage of Regulation F by the Consumer Financial Protection Bureau ("CFPB") at the end of 2021.

14.     UNDISPUTED.

## ARGUMENT

The relevant facts of this case are undisputed, unassailable, and dispositive – Plaintiff disputed his account with the credit reporting agencies ("CRAs"), CACi received the dispute, CACi investigated, and CACi deleted the reporting within thirty days. DSMF 45-51. Plaintiff has known these facts since – at least – Roger Weiss's deposition on March 8, 2022, if not since before he even filed this suit. It is no wonder, then, that Plaintiff has spent the past nine months attempting to transform this case into a corporate conspiracy, to the point where his Response Brief relies almost exclusively on an unpled cause of action surrounding lawful conduct that had absolutely no substantive effect on Plaintiff's life.

Plaintiff's Response suffers from two massive – and dispositive – problems. First, Plaintiff has not responded to CACi's Statement of Material Facts, which, under this Court's rules, requires the Court to deem those facts admitted. And those facts militate in favor of summary judgment, because they demonstrate that every claim in the Second Amended Complaint is without any merit whatsoever. Second, Plaintiff's additional arguments – concerning CACi's use of the name "Midwest Recovery Systems, LLC" in its reporting – are not pled in the operative Second Amended Complaint. Under clear and longstanding case law, Plaintiff simply cannot raise it now in his Response brief.

Even if this Court considers Plaintiff's unpled claims concerning CACi's use of its lawful d/b/a, Plaintiff fails to connect the fundamental dots that must be connected in every lawsuit at every level – between the defendant's conduct and the plaintiff's injury – because he simply was not harmed in any way by CACi's innocuous use of that d/b/a. He still disputed the debt, and CACi still investigated the account and deleted the reporting within the timeframe required. Thus, even if the Court considers the use of the name misleading, it was not a material misrepresentation,

and it just did not violate the FDCPA. And for essentially the same reason, Plaintiff lacks Article III standing on that claim. The Court should find that the undisputed facts require summary judgment in CACi's favor.[2]

I.   **PLAINTIFF CONSTRUCTIVELY ADMITS CACI'S STATEMENT OF FACTS IN ITS ENTIRETY**

At the outset, as a result of Plaintiff's failure to file any response to CACi's Statement of Material Facts, the Court should deem CACi's Statement of Facts admitted and undisputed in its entirety. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). To properly dispute a factual assertion, a party must either "(A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Under the rules of this Court, a non-movant's brief "*must* include . . . all challenges to the movant's asserted facts[.]" Civil L.R. 56(b) (emphasis added). And "[t]he Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment." Civil L.R. 56(d).

The Eleventh Circuit has repeatedly upheld such "deeming orders," noting, about a similar local rule from the Northern District of Georgia, that the rule "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge."

---

[2] As to any and all causes of action and/or arguments that are not directly addressed in this Reply Brief, CACi repeats and reincorporates the arguments presented in its opening motion and brief as if fully laid out herein.

*Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *see also, e.g., Bell v. Frost*, No. CV 19-00230-KD-N, 2019 WL 7160385, at *3 (S.D. Ala. Sept. 25, 2019).  And such an order is clearly appropriate, here.  With all of CACi's material facts admitted, for the reasons discussed at length below and in CACi's initial motion and brief, those facts unambiguously entitle CACi to judgment as a matter of law.

## II.   THE FACTS DISPROVE PLAINTIFF'S FCRA CLAIMS

Plaintiff cannot prove his FCRA claims, as the undisputed material facts show CACi conducted a reasonable investigation upon notice of Plaintiff's dispute and then deleted the reporting in a timely fashion.  *See* DSMF 25-31, 45-58.  *CACi repeats and reincorporates the arguments set out in Section I of its initial motion and brief as if fully laid out herein.*

Plaintiff's Response mischaracterizes the entirety of CACi's argument, claiming "CACi argues (1) that its reporting was accurate; (2) the Plaintiff suffered no recoverable damages and (3) there is no evidence of willfulness to support the punitive damages claims."  Resp. Br. at 7.  In fact, CACi demonstrated that it reasonably investigated the dispute and timely deleted the reporting, an argument that Plaintiff's Response ignores entirely.  Def. Br. at 14-18.  He then argues that CACi's arguments have no merit because CACi reported the "bogus debt" in the first place, "attempted to coerce [Plaintiff] by parking it on his credit report," and because CACi initially verified the debt as accurate.  *Id.*

Plaintiff fails to address how these first two allegations – reporting the "bogus debt" and "parking" it on his credit report – would have any relevance whatsoever to his FCRA claims or the statutory provisions set forth in the FCRA, even if they were true.  Plaintiff's claims under the FCRA's section 1681s-2(b) are that CACi failed to investigate his dispute, failed to review all the relevant information with regard to his dispute, and continued to report information it knew was

false after receiving notice of the dispute.  Doc. 26 at ¶ 33.  These claims, as well as the relevant provision of the FCRA itself, are clearly limited to the period of time *after* Plaintiff's dispute was received.  *See Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) (no private cause of action against furnishers under FCRA merely for reporting inaccurate information).  Under its plain language, the FCRA is only implicated against a furnisher when a dispute is received.  *See id*.  Thus, none of his FCRA claims can have anything to do with whether the debt was valid to begin with, nor do they implicate "debt parking."

And Plaintiff's third FCRA argument – that CACi initially verified its reporting – is made entirely irrelevant by the fact that CACi still deleted that reporting within the required thirty-day time period.[3]  Indeed, as argued in CACi's initial brief, the Eleventh Circuit has held that, if the final result is an appropriate deletion, it simply does not matter what happens before that deletion.  *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018).  Because Plaintiff chose not to respond that argument in his Response Brief, CACi will not repeat it, here, except to note that CACi stands on the arguments in Section I of its original Brief and incorporates them as if fully laid out herein.  *See* MSJ Br. at 17-18.  Plaintiff has failed to demonstrate that, had CACi acted any differently, the result would have been different.  As a matter of law, his FCRA claims necessarily fail.

---

[3] As noted in CACi's initial brief, Plaintiff also ignores Mr. Weiss's testimony that "verification" and "validation" are two separate processes, in which CACi engaged simultaneously.  DSMF 27-28.  CACi "verified" the information provided with the dispute as accurate because the dispute information matched the records provided by the creditor.  DSMF 28, 30, 48.  However, when CACi was unable to *validate* the debt within the time period allowed, CACi deleted its reporting. DSMF 26, 30, 31, 50, 51.

### III.   PLAINTIFF'S FDCPA CLAIMS ARE EITHER UNSUPPORTED OR UNPLED

#### a.   Plaintiff Provides No Support for His Pled Causes of Action

Plaintiff's FDCPA claims are unsupported by any evidence whatsoever.  In his Second

Amended Complaint, Plaintiff lists three theories of recovery for his claims under the FDCPA:

> a. Furnishing information regarding debt to a consumer reporting agency before
> communicating with the consumer about the debt, in violation of the FDCPA, 15
> U.S.C. § 1692f.
>
> b. Collecting and attempting to collect late fees it was not entitled to in violation
> of 15 U.S.C. § 1692f (1); and
>
> c. Providing false information regarding the status of a loan in violation of 15
> U.S.C. § 1692c.

Doc. 26 at ¶ 39.  As argued at length in CACi's opening brief, for the first listed claim, Plaintiff

provides no legal support for his application of section 1692f, and other courts have found that,

even where the FDCPA does require an initial communication (such as under section 1692g), that

requirement is not triggered by merely reporting the debt to the CRAs).[4]  *See* MSJ Br. at 23-24.

And Plaintiff, himself, admitted he had no basis other than pure conjecture for his second allegation

– that CACi collected late fees to which it was not entitled.  MSJ Br. at 24-25.

Plaintiff's third FDCPA claim cites section 1692c, which contains no provision concerning

"[p]roviding false information regarding the status of a loan[.]"  Assuming this statutory citation

is a clerical error, the substance of this claim is not proven and is otherwise entirely defensible.

First, Plaintiff has still provided no evidence whatsoever (and, with discovery closed, cannot

provide any additional evidence) that the debt was never a valid debt, other than his own self-

serving testimony.  Indeed, his Response Brief contains nothing but conclusory allegations that

---

[4] Long after the operative facts of this case, on November 30, 2021, the CFPB issued Regulation
F, which, for the first time, added a pre-communication requirement for furnishers of credit
information. *See* 12 C.F.R. § 1006 *et seq*.  This provision is obviously not implicated, here.

the debt was "bogus," without a single citation to the record to support this claim.  *See* CACi's Responses to PSMF 1, 5, *supra*.  CACi reasonably investigated the debt upon receipt of Plaintiff's dispute and found no reason to believe the debt was invalid, then, but deleted its reporting because the creditor did not provide validation information within the required time period.  *See* CACi's Response to PSMF 5, *supra*.  And the Court has no reason to believe or find that the debt was not a valid, due-and-owing debt at the time CACi reported it, just as CACi had no reason to believe it was invalid when it reported the debt in the first place.  *See* DSMF 34-39, 42, 44.

Even if there were any evidence that the debt was invalid before its placement,[5] and the Court considers the initial reporting to be an FDCPA violation, the evidence available to CACi, as well as CACi's actions in investigating the dispute, clearly qualify for the bona fide error defense under section 1692k(c) of the FDCPA.  This defense protects a debt collector from liability where a violation is unintentional, was a bona fide error, and occurred despite procedures "reasonably adapted to avoid any such error."  *Valdes v. Accts. Receivable Res., Inc.*, 544 F. Supp. 3d 1313, 1319 (S.D. Fla. 2021).  First, CACi's contractual relationship with the debt buyer who owned Plaintiff's account – O'Brien Wexler ("OBW") – included a provision that prohibited OBW from providing erroneous information regarding the accounts it placed with CACi.  DSMF 21.  Further, at the time CACi received Plaintiff's account from OBW, the information provided showed two other accounts under Plaintiff's name, which listed different account numbers, original balances, dates incurred, and, regarding one of the debts, a different creditor-client.  DSMF 34-39.

---

[5] CACi's reading of the Second Amended Complaint is that Plaintiff's claim in ¶ 39(c) flows from CACi's alleged actions after the dispute, rather than before, and this interpretation is supported by Plaintiff's Response Brief.  *See, e.g.,* Resp. Br. at 10 ("CACi *continued* to report the bogus loan") (emphasis added).  However, should the Court read the Complaint differently and apply this claim to the entire period of reporting, the following paragraph is intended to address that allegation.

The information regarding Plaintiff's account was provided by OBW.  DSMF 40.  And the information about the previous accounts came from data previously maintained by Midwest, which had covenanted in its Asset Purchase Agreement with CACi that it was operating its business in compliance with all laws, regulation, and orders applicable to its business.  DSMF 9, 41.  As a result, the information in CACi's possessions clearly looked like three separate account.  CACi simply had no reason to believe the debt was invalid (i.e. that it was a previously-disputed debt) upon placement – indeed, all the information available to CACi at the time indicted that it was a debt that had never been serviced by Midwest or anyone else.  DSMF 42, 44.

In short, Plaintiff cannot prove the debt was invalid, and has provided no evidence that it was.  CACi has no reason whatsoever to believe it was invalid at placement.  And CACi engaged in reasonable procedures in investigating the dispute, then properly deleted its reporting when it could not be validated.  None of Plaintiff's pleaded FDCPA causes of action are supported by the undisputed facts of this case.  CACi is entitled to judgment as a matter of law.

**b.      Plaintiff's "False Name" Claim is Neither Cognizable Nor Supportable**

The majority of Plaintiff's Response Brief claims CACi violated the FDCPA by using its d/b/a, Midwest Recovery Systems, LLC, in its reporting of the account in question.  The Court should ignore these arguments and rule based on Plaintiff's pleaded causes of action, only.  "It is well-established that a plaintiff may not raise a new claim or theory of relief for the first time in response to a defendant's motion for summary judgment." *Huddleston v. Sunshine Mills, Inc.*, 965 F. Supp. 2d 1298, 1310 (N.D. Ala. 2013).  Indeed, Plaintiff tried to amend his Complaint last September to include a number of dramatic conspiracy claims about a plot that tangentially included CACi using Midwest's name (to what end is anyone's guess).  *See* Doc. 72-2. *This Court denied Plaintiff leave to file that Third Amended Complaint.*  Doc. 85.  Thus, not only has Plaintiff

has not pled his "false name" claims – the Court affirmatively refused to allow him to plead similar claims. Having failed to amend his Complaint through the appropriate means, Plaintiff now attempts to "amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). This is clearly prohibited. *Id.*; *see also Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017); *Woodyard v. Alabama Dep't of Corr.*, No. CIV.A. 12-0566-WS-N, 2014 WL 4804059, at *20 (S.D. Ala. Sept. 26, 2014).

Even if the Court stretches its reading of the Second Amended Complaint to include *any* misrepresentation claims, the undisputed facts prove CACi's use of the Midwest name was not a violation. First, the use of the name was *truthful* – it is undisputed that CACi owned and had the right to use the d/b/a "Midwest Recovery Systems, LLC." *See* DSMF 6. Plaintiff blankly claims that CACi still could not use it because it allegedly was not registered, but he provides the Court neither legal support for that argument nor any evidence whatsoever that the name is not registered.[6] In short, Plaintiff has given this Court no reason to believe CACi's use of its contractually-owned d/b/a was either untruthful or unlawful, other than the mere arguments of counsel, which are, as noted above, not evidence. *See* Response to PSMF 5, *supra*.

And the history of this case proves that the use of the name, even if it was misleading, did not effect anyone's rights or obligations, as if, for example, the name use could somehow shield CACi from liability. Plaintiff disputed the reporting of his debt with the CRAs, and those reports

---

[6] Plaintiff cites to a website, here, which is not properly entered as an exhibit and should not be considered in any way by this Court. *See* Resp. Br. at 11. Even if the Court does follow the link in Plaintiff's brief, it will merely take the Court to the Alabama Secretary of State's internet listing for CACi – which information *does not include* whether an entity has a d/b/a. Plaintiff's improperly-presented "evidence" proves nothing. *See* Ala. Sec. of State, Business Entity Records, "Consumer Adjustment Company, Inc.," *at* https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=000574279&page=name&fi.

were sent to CACi.  DSMF 46, 47.  CACi investigated his disputes, and when the creditor failed

to validate the account, CACi deleted the reporting within thirty days of receiving the disputes.

49, 50, 51.  And when Plaintiff filed this lawsuit, CACi executed a waiver of service within sixteen

days of the summonses being issued.  Docs. 4, 9.  In sum, despite CACi's allegedly-nefarious use

of the Midwest d/b/a, neither Plaintiff's dispute, nor the deletion of the reporting, nor any stage of

this lawsuit has been delayed or affected in any way by CACi's use the d/b/a.  Plaintiff simply was

not misled.

Finally, even if CACi's use of the Midwest d/b/a was somehow misleading, it *still* did not

violate the FDCPA.  "Courts throughout the country have consistently held that only material

misrepresentations constitute a violation of the FDCPA."  *Rivas v. Midland Funding LLC*, 398 F.

Supp. 3d 1294, 1304 (S.D. Fla. 2019); *see also, e.g., Afewerki v. Anaya L. Grp.*, 868 F.3d 771, 773

(9th Cir. 2017).  To be material, "a statement must influence a consumer's decision or ability to

pay or challenge a debt."  *Id.* (internal citations omitted).  "This materiality requirement limits

liability under the FDCPA to genuinely false or misleading statements that may frustrate a

consumer's ability to intelligently choose his or her response."  *Id.* (internal citations omitted).

"Thus, only misstatements that are important in the sense that they could objectively affect the

least sophisticated consumer's decisionmaking are actionable."  *Id.* (citing *Lox v. CDA*, Ltd., 689

F.3d 818, 826 (7th Cir. 2012)).[7]

As discussed in the previous paragraphs, Plaintiff's own experience disputing – and then

suing over – this debt proves the use of the Midwest name was not material.  As Plaintiff avers in

his Statement of Facts, he was initially "unaware of the existence of CACi."  PSMF 4.  Thus, he

---

[7] Plaintiff correctly notes that the appropriate standard in this Circuit for FDCPA violations is
whether the conduct would have misled the "least sophisticated consumer."  *Jeter v. Credit
Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)

had no reason to believe he needed to send his dispute to the CRAs claiming the debt was under any name other than Midwest.  And when he sent that dispute, CACi received it, investigated it, and deleted its reporting.  Even when he filed this lawsuit, CACi immediately answered (*without being served*), and later jointly stipulated to Plaintiff's dismissal of Midwest and naming of CACi. The "Midwest" name clearly had no effect whatsoever on Plaintiff's decision-making or the effectiveness of his actions.  And Plaintiff provides no reason to believe the experience of the least sophisticated consumer would be any different than his own.[8]

Notably, Plaintiff was so unaffected by CACi's use of the "Midwest" name that he never once mentioned it during his deposition.  In fact, he very directly stated that the validity of the debt itself, *not* the Midwest name, was the basis for his FDCPA claim:

> Q.      [I]n your own words, could you tell me what the basis of your claim under the FDCPA that they provide that CACi provided false information regarding the status of a loan?
> A.      I never had a loan with Payday.com, and they were providing information to the credit reports that I did.

Ex. 3 at 42:16-23.  He continued:

> Q.  When you claimed that they provided false information, can you tell me why that information was false?
> A.  I never had a loan with NationalPaydayLoan.com.
> Q.  Okay.  So this debt never existed?
> A.  No.

Ex. 3 at 28:11-22.  At no time in his testimony is the "false name" claim even mentioned.

In the name of fundamental fairness and under binding, longstanding case law, this Court should not consider Plaintiff's "false name" allegation.  Even if the Court finds a way to reach that

---

[8] Indeed, though CACi maintains its position that the Court should not consider Plaintiff's Exhibit 6, Plaintiff's claim that CACi has answered lawsuits against Midwest in several other cases ironically proves that other consumers, too, have had a similar, unimpeded ability to sue CACi over debts reported under the Midwest d/b/a.  *See* PSMF 8.

claim, though, the Court should find it was not an untrue statement, or that, even if technically untrue, it was not materially misleading, and thus did not violate the FDCPA. If Plaintiff's experience proves anything, it is that CACi's use of the Midwest d/b/a was completely harmless.

## IV.   PLAINTIFF LACKS ARTICLE III STANDING FOR HIS FALSE NAME CLAIMS

As argued above, the Court should not consider Plaintiff's "false name" claims because they are unpled and obviously inaccurate. In the scenario, though, under which the Court agrees with CACi as to every claim *except* the false name claim – essentially leaving the false name claim standing alone – the Court *still* would not reach its merits, as Plaintiff would lack Article III standing. CACi argued the standing issue as it related to the putative class in its Response to Plaintiff's class certification motion. Doc. 93 at pp. 19-22. As that analysis would be identical to the analysis of the "false name" claim, here (with the exception of changing a few plural nouns into singular ones, which CACi has every confidence in the Court's ability to do), CACi incorporates the arguments set out there as if fully laid out herein. For those reasons, and the reasons laid out in the above discussion, Plaintiff did not suffer any injury whatsoever related to the use of the Midwest d/b/a, and thus lacks Article III standing on that claim.

## CONCLUSION

Based on the undisputed facts of this case, no reasonable factfinder could find in Plaintiff's favor as to any of his causes of action. CACi is entitled to summary judgment on all of Plaintiff's claims and causes of action.

WHEREFORE, Defendant Consumer Adjustment Company, Inc., respectfully requests this Court enter judgment granting Defendant's Motion for Summary Judgment, award its fees and costs incurred herein, and dismiss all Plaintiff's claims with prejudice.

**[SIGNATURE AND SERVICE ON FOLLOWING PAGE]**

Dated: June 15, 2023                            Respectfully Submitted,

**MARTIN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ MATTHEW J. BELL
Matthew J. Bell, Mo. Bar No. 67241
*Admitted Pro Hac Vice*
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
mbell@mamlaw.com
P: (314) 669-5490
F: (888) 632-6937

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 15, 2023, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

Earl P. Underwood , Jr.
*Underwood & Riemer, PC*
Email: epunderwood@gmail.com

Steven P Gregory
*Gregory Law Firm, P.C.*
Email: steve@gregorylawfirm.us

*Attorneys for Plaintiff*

/s/ Matthew J. Bell

16